18   189
59   211

## The town of MIDDLETOWN *against* The town of BERLIN.

Where notice of the condition of certain paupers in the town of *M*, was given to the select-men of *B*, in these words: " *E. H.*, wife and children of your town, are here, sick, and on expense ;" it was held, that the notice as to *E. H.* and his wife was sufficient, but not as to the children.

No verbal information will remedy such defect.

A pauper, whose settlement was originally in the town of *B*, removed to the town of *M*, and resided therein more than six years continuously, by which he gained a settlement in *M*, unless he had neglected or refused, within that period, to pay any taxes assessed upon him, after legal demand. In a suit brought by *M* against *B*, for the support of this pauper, the plaintiffs, to show that a tax had been legally imposed upon him, offered in evidence a document, purporting to be the assessment list of a certain district in the town of *M*, signed *L. B.*, assessor, and by him lodged in the town-clerk's office. There were, at this time, five assessors of *M*, duly chosen, qualified and acting, of whom *L. B.* was one; and this assessment list was his sole act, without the agency or sanction of the others. Held, 1. that in order to show that the tax in question was legally imposed, a legal assessment list was indispensable; 2. that to constitute a legal assessment list, the agency or sanction of a majority of the assessors was necessary; 3. that neither a previous

*Middlesex,*
July, 1846.

Middletown
*v.*
Berlin.

vote of the town, nor a long continued usage therein, would validate an assessment list not made out according to law; 4. that in this suit, the defendants could take advantage of any illegality in imposing the tax; 5. that the defect in the present assessment list was not remedied, by any of the confirming acts of the legislature; 6. that consequently, the evidence offered was inadmissible.

THIS was an action of *assumpsit,* to recover the expense of support furnished by the plaintiffs to *Elijah Hubbard* 2d, and *Anna,* his wife, and their five minor children, [naming them,] alleged to be inhabitants of the town of *Berlin,* who were residing in the town of *Middletown,* and were destitute of property, and reduced by sickness to want and distress; of all which the defendants had notice.

The cause was tried, on the general issue, at *Middletown, February* term, 1846, before *Church,* J.

The plaintiffs claimed to have proved, that *Elijah Hubbard* 2d, mentioned in the declaration, was born in the town of *Berlin,* and continued to reside and have a settlement in that town until his marriage; that on the 2d of *September,* 1827, he was married to *Anna T. Johnson,* his wife, mentioned in the declaration; that he immediately afterwards removed to the town of *Middletown,* where he continued to reside until the commencement of this suit; that the persons named in the declaration as his children, were such, and were minors during the period therein mentioned, and until the commencement of this suit; that from the 25th of *November,* 1843, to the commencement of this suit, *Hubbard* and his family were destitute of property and unable to provide for themselves, and were reduced, by sickness, to want and distress; that on the 1st of *December,* 1843, a notice in writing, signed by *Samuel Babcock,* one of the select-men of *Middletown,* was put into the post-office in *Middletown,* directed to the select-men of the town of *Berlin,* and was afterwards, in due course of mail, received by them; and that this notice was as follows: " *Middletown, December* 1st, 1843. Select-men of the town of *Berlin*—Gentlemen, *Elijah Hubbard* 2d, wife and children, inhabitants of your town, are here, sick, and on expence. The wife has been accidentally shot, and is considered in a dangerous situation. We shall look to your town for all legal charges. Respectfully yours, *Samuel Babcock,* Select-man."

The plaintiffs then offered evidence to prove, that from the

25th of *November*, 1843, to the 6th of *February*, 1845, the plaintiffs laid out and expended, for the necessary support of *Hubbard* and his wife and children, the sum of 150 dollars, 32 cents. To the admission of this evidence the defendants objected; and the court excluded it, so far as it tended to show any expenditure for all or any of said minor children.

The plaintiffs then offered in evidence the testimony of *William J. Trench*, who was a select-man of the town of *Middletown*, at the time when the above-mentioned notice was given, for the purpose of showing that *Shubael Risley*, then a select-man of the town of *Berlin*, in consequence of such notice, and within a few days after it had been received, had an interview with the witness relative to the paupers in question, and to the liability of the town of *Berlin* for their support; and that, during the conversation between them, *Risley* received particular information respecting the nature and extent of the plaintiffs' claim, and the persons to whom such support was furnished; which testimony the plaintiffs claimed to be admissible, in connexion with said written notice, for the purpose of showing, that the town of *Berlin* and the selectmen thereof, had reasonable and legal notice of the plaintiffs' claim respecting said pauper, and his wife, and their minor children. To this testimony the defendants objected; and the court excluded it, so far as it tended to show any verbal notice or information to the town of *Berlin*, or the select-men thereof, of the claim of the plaintiffs respecting said paupers, or either of them.

The plaintiffs then claimed, that *Hubbard* had not gained a settlement in the town of *Middletown*, by commorancy, for the reason that he had failed and neglected to pay his town, state, and highway taxes, assessed upon him upon the assessment lists of the years 1831, 1835, and 1838, after demand thereof had been made according to law, by the collector; and to show, that such taxes had been duly assessed upon *Hubbard*, and that he was legally liable to pay them, the plaintiffs offered in evidence certain documents, purporting to be assessment lists of the district of *Westfield*, in the town of *Middletown*, for said years, and especially, one for the year 1835, signed by *Luther Bowers*, assessor, accompanied with evidence, that it had been lodged in the office of the town-clerk of the town of *Middletown*, by said *Luther Bowers*,

assessor, before the 1st of *December*, 1835.    To this evidence the defendants objected, on the ground that during each of said years, and especially in the year 1835, the board of assessors of the town of *Middletown*, consisted of five persons, duly chosen and qualified to act as such; and that the supposed list for the year 1835 was in the following form:

"WESTFIELD SOCIETY LIST for 1835."

[Here follow the names, polls and rateable estate of sundry individuals.]    "The foregoing assessment lists were taken by me, *Luther Bowers*, Assessor."    This list included, among others, the name of *Elijah Hubbard* 2d, with the sum of 21 dollars, 68 cents, annexed thereto.    It was not signed or made out, by any other person; nor was the property in *Middletown* liable to be assessed, valued and equalized in any other way; nor was there any evidence that the list, or the property embraced in it, had ever been acted upon or considered, by any of the other assessors.    The defendants therefore claimed, that such list was inoperative and void.    The court sustained the objection, and excluded the list and schedule.

The plaintiffs then offered the same list and schedule, in connexion with evidence to prove, that it had been the usage of the town of *Middletown*, annually, for twenty-five years, to divide the town into five districts, and to assign an assessor to each of the assessment districts, for the purpose of making assessments therein : and that it had been the usage of the assessors, during that period, each one separately to assess and value the property in his district, and make out the lists of the polls and rateable estate therein, and sign the same, and return them, separately, to the office of the town-clerk ; and that the lists in the above-mentioned years had been made out, signed and returned according to such usage.    To the admission of this evidence the defendants also objected ; and the court excluded it.

The jury returned a verdict for the defendants ; and the plaintiffs, claiming that the court erred in excluding the evidence offered by them, moved for a new trial.

*Ellsworth*, (with whom was *Barnes*,) in support of the motion, contended, 1. That the written notice given by the select-men of *Middletown*, to the select-men of *Berlin*, was

sufficient to include the minor *children* of the pauper, without *naming* them. It will be conceded, that his *wife* is aptly designated, by that term alone. Why then are not the minor children properly pointed out, by the term *children?* The same reasoning is applicable to both. The wife and minor children of a man are legally dependent upon him for support. They have no credit. Their earnings are his. They are one with him, for every purpose of maintenance. The writing in effect informed the town of *Berlin,* that *Hubbard's family* were destitute, &c. The names of the children would have added nothing of importance to the notice given. Technicalities in these matters should be avoided. *Bartlett* v. *Kinsley* & al., 15 *Conn. R.* 327. *Alden* v. *Rounseville* & a!., 7 *Metc.* 219.

2. That if the notice was deficient in respect to the minor children, it was made good by the subsequent communication of all the facts in the case, by *Trench,* one of the selectmen of the town of *Middletown,* to *Risley,* one of the selectmen of *Berlin ;* and therefore, the testimony of *Trench* was admissible. *Embden* v. *Augusta,* 12 *Mass. R.* 307. *Newtown* v. *Danbury,* 3 *Conn. R.* 553. The notice authorized by the statute does not exclude other actual notice. It stands on no higher ground than notice in ordinary cases ; *e. g.* notice of the dishonour of a bill or note. *Litchfield* v. *Farmington,* 7 *Conn. R.* 107. It is sufficient, if it contains enough to put the party on inquiry, and does not lead him into error.

3. That the assessment lists offered by the plaintiffs, were admissible in evidence. In the first place, there is nothing in the statute which forbids a town to assign certain districts to certain assessors. Secondly, the object of the legislature in allowing a town to choose any number of assessors not exceeding five, evidently was, to accommodate the inhabitants of large towns, by a division of labour among the assessors. Thirdly, the statute does not require that the assessment lists shall be *signed* by the assessors. Fourthly, the documents offered came from the town-clerk's office, the proper repository, and from the custody of the proper officer. 1 *Stark. Ev.* 169. The presumption therefore is, that they were duly acted upon and recognized, by the assessors, until the contrary is proved.

4. That if there was a defect or irregularity in laying the tax upon *Hubbard,* he alone can take advantage of it. If he makes no objection, strangers cannot question its legality. Here was a list and a tax *de facto.* The town of *Berlin* claims nothing under *Hubbard*—does not stand in his shoes. An unrecorded deed is good against a stranger claiming no interest under it. So a fraudulent grantee has a good title as against strangers. A usurious mortgage cannot be avoided, by one who is not affected by the usury. *Reading* v. *Weston,* 7 *Conn.* R. 413.

5. That if there were originally infirmities in these documents, they were made good, by the confirming acts from 1831 to 1837, inclusive. *Stat.* 608. & seq. (ed. 1838.)

*Baldwin* and *T. C. Perkins,* for the defendants, after remarking, that the liability of towns for the support of paupers, depends wholly upon statute provision, contended, 1. That the written notice given in this case was not sufficient; the *names* of the paupers, (with one exception,) not having been communicated. *Stat.* 364. *tit.* 52. *c.* 2. *s.* 5. (ed. 1838.) *Chichester* v. *Pembroke,* 2 *N. Hamp.* R. 530. *Walpole* v. *Hopkinton,* 4 *Pick.* 358. *Embden* v. *Augusta,* 12 *Mass. R.* 307. *Shutesbury* v. *Oxford,* 16 *Mass. R.* 102.

2. That the defect in the written notice, was not helped, by the subsequent *verbal* notice. This is neither "a letter put in the mail," nor "actual notice in writing."

3. That *Hubbard* having resided in *Middletown* more than six years before the supplies were furnished, had unquestionably acquired a settlement there by commorancy, unless this result was prevented, by his "neglecting or refusing to pay his taxes, demand having been made by the collector therefor." *Stat.* 362. (ed. 1838.) The taxes here referred to, must be *legal* taxes; and to make them such, they must have been *legally* assessed. *Stat.* 602. *tit.* 107. *c.* 1. *s.* 14. (ed. 1838 ) The duty of making and adjusting the assessment lists, is by law imposed upon *the assessors.* To make any act the act of the assessors, a *majority* at least must unite in it. *Green* v. *Miller,* 6 *Johns.* R. 39. 41. *Grindley* v. *Barker,* 1 *Bos. & Pul.* 236. But the document offered by the plaintiffs was not, on the face of it, the assessment list of *Middletown.* The name of that town does not appear in the caption, or in

any part of the document. It is signed by *"Luther Bowers, assessor,"* and by him only. If he was one of the five assessors of *Middletown* for the year 1835, and this was the list made out by him, there is no pretence that the others, or a majority of the whole, had any thing to do with it.

4. That the usage of *Middletown* cannot controul or affect the express provisions of the statute. An illegal usage does not validate illegal proceedings. *The Schooner Reeside,* 2 *Sumn.* 567. *The New-York Firemen's Insurance Company* v. *Ely* & al. 2 *Cowen,* 678. *Dunham* v. *Gould,* 16 *Johns. R.* 367. *Homer* v. *Dorr,* 10 *Mass. R.* 26.

5. That none of the confirming acts reach the defects in this case. *Stat.* 611, 12. (ed. 1838.)

Church, J. The first question to be considered arises upon the letter of notice, sent by mail, by the select-men of *Middletown,* to the select-men of *Berlin,* informing them, that *Elijah Hubbard* 2d, and his wife and children, were upon expense in the former town. That this was a legal notice of the condition of *Hubbard* himself, was admitted; and the court below considered it good as to his wife also, but was of a different opinion respecting its effect upon the expenses incurred in support of his children.

This entire subject is of statute regulation. We have only to determine what this requires. The 5th section of the "Act to provide for the support of Paupers," enacts, that a letter put in the mail, stating the name of the pauper, and that he is chargeable, shall be sufficient evidence that notice was given. The name of the wife, by this letter, was in effect communicated; the designation of her as the wife of *Hubbard,* was equivalent to this; it distinguished her from all other persons. But, the names of the children were not mentioned at all; nor was any designation given, by which the select-men of *Berlin* could determine, which, or how many, of them were paupers, or required support or removal.

The plaintiffs attempted to help out this defect, by proving a subsequent verbal information of the names and conditions of the paupers, given by one of the select-men of *Middletown,* to a select-man of *Berlin.* This evidence the superior court rejected. The statute requires the select-men of every town in which a pauper belonging to another town is chargeable,

to give notice to such town of his condition within a limited time, or no recovery can be had for expenses for the time in which notice is neglected. Written notice alone is prescribed, and no other is alluded to. And this written notice may be given, either by letter put in the mail, as was done in this case, or by actual notice in writing, sent in some other way. To sanction verbal notice, however definite, would be to disregard this provision of law, and render it useless.

But a more important question remains. *Berlin* was the original place of this pauper's settlement ; but he had resided in the town of *Middletown* for more than six continuous years before these expenses were incurred, and so as by commorancy to have become a settled inhabitant there, unless he had neglected or refused, within that time, to pay any taxes assessed upon him, after legal demand.

The plaintiffs, as they were bound to do, in order to avoid the effect of such residence in their town, attempted to prove, that taxes had been legally assessed upon the pauper, which he had not paid. The burthen of this proof was upon them ; and they recognized this, and offered in evidence what they called, assessment lists of the district of *Westfield,* in the town of *Middletown,* annually made up, for several years ; and especially one for the year 1835. This was made up and signed, by *Luther Bowers,* assessor ; and was by him lodged in the office of the town-clerk, and was accompanied by no evidence that it had ever been seen, heard of or sanctioned, by any other assessor ; although it was conceded, that during all this time, the board of assessors of the town of *Middletown* consisted of five persons, duly chosen, qualified and acting. This assessment was in truth, and on its face purported to be, the sole act of *Bowers,* and was confined to a single section of the town, called *Westfield* district. This evidence was properly excluded, by the superior court.

The pauper had, presumptively, acquired a settlement in *Middletown,* by an acknowledged residence there of more than six years. This could only be rebutted, by proof that he was a tax debtor—that a tax had been legally imposed upon him, which, upon demand, he had refused to pay. The assessment lists of the several towns are the only rule and basis upon which counties, towns and other communities can levy taxes. These must be legal, or the taxes laid and apportion-

ed upon them, cannot be. It is not sufficient that a colourable or pretended tax has been demanded of *Hubbard,* and payment refused ; for it may be, that the refusal was upon the ground of the illegality of the tax, and not because he was unable to pay it.

*Middlesex,*
*July, 1846.*

Middletown
*v.*
Berlin.

This pretended assessment list was in no sense the act of the board appointed by the inhabitants of *Middletown* to value and equalize their property. That board consisted of five persons ; but this paper is the partial and unauthorized act of one only. The rule governing the execution of private and public powers has long been settled. A power conferred upon two or more persons, by individuals, for private purposes, must be executed by all, unless it be provided, by the act conferring the power, that a less number may effectually execute it ; but an authority imposed by law for public purposes, and especially for purposes of a judicial character, may be executed by a majority, if all have been legally notified to act. It is believed, that no case can be found, which will justify the performance of a duty required of an aggregate body, by one only, as has been attempted here. Executors and administrators may act separately, in mere ministerial duties, in cases where the law will imply the sanction of the majority. *Grindley* v. *Barker,* 1 *Bos. & Pul.* 229. *Green* v. *Miller,* 6 *Johns. R.* 39. *Patterson* v. *Leavitt,* 4 *Conn. R.* 50.

Neither the vote of the town directing the election of assessors resident in different districts, nor the usage of the assessors thus chosen, that each might act independently of his associates, in different sections, can give validity to this procedure. Assessors are the officers of the law, and must obey the law ; and no direction of the town, nor long continued usage, can justify a departure from the law.

We would not intimate that every preliminary act of the assessors should be performed at an assembled board. There are various ministerial acts, which one may perform alone—such as distributing and setting up the legal notices, receiving the lists of individuals, viewing the estate to be valued and equalized. But the statute contemplates but one assessment of the entire property to be valued in each town, and its final approval to be the joint act of the board of assessors and but one abstract of the whole to be returned by the board to the town-clerk. To appraise or value the taxable estate

of individuals, is but a part of the assessors' duty; another equally important duty is required by the law—that of equalization. This requires a careful revision of the whole, by the board of assessors, and should be the result of its deliberate judgment. No system of taxation can be tolerable, or will be long submitted to, unless it be equal in its operation. And it is quite clear, that in cases like the present, where each assessor acts independently of his fellows, and confines his actions to property within fixed limits, there can be no equalization : each then adopts and carries out his own principles of valuation, with no certainty, and hardly a probability, that they will be adopted and acted upon by others, in all respects. In such cases, the relative estimate of value in the city and the country, in the village and away from it, may be very unlike.

These views did not seem to be strongly denied by the plaintiffs ; but their effect was intended to be evaded, by the argument, that the town of *Berlin* could not be permitted to object to the legality of the tax assessed upon the pauper— that the objection could come only from him. We think this suggestion has been already answered. To avoid the effect of the pauper's residence in *Middletown*, it was incumbent upon the plaintiffs to show, that their own action had been legal, and that they had assessed a tax which the pauper was by law bound to pay.

In examining the many confirming acts of the legislature, which the negligence of assessors and others concerned in the assessment of taxes, have annually made necessary, under our present system of taxation, we find none, which, upon any reasonable construction, can remedy the defects in this procedure.

We are of opinion, therefore, that the decision of the superior court was correct ; and that no new trial should be granted.

In this opinion the other Judges concurred, except STORRS, J., who gave no opinion, being interested as the owner of real estate in *Middletown*.

New trial not to be granted.