CHAMBER OF COMMERCE OF GREATER WATERBURY, INC. *v.* WILLIAM M. LANESE ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued March 6—decision released June 9, 1981

*John C. Bullock,* for the appellant (plaintiff).

*Thomas K. McDonough,* for the appellees (defendants).

SHEA, J. The plaintiff brought this taxpayer's suit against the city of Waterbury, its board of tax review and William M. Lanese, who had contracted with the board to review the valuations used by the assessor in establishing the assessments of commercial and industrial properties for the grand list of October 1, 1979. The plaintiff claims that this contract is illegal on two grounds: (1) that only a certified "revaluation company," a status which Lanese does not claim, may perform, according to the terms of General Statutes § 12-2c, the services which are the subject of the contract in question; and (2) that the board of tax review, in exercising its statutory powers to decide appeals from the assessor and to equalize and adjust valuations, had no valid reason to employ Lanese for the purposes specified in the contract. The complaint sought an injunction against any payment for the services of Lanese under this contract. The trial court rendered judgment for the defendants and the plaintiff has appealed, raising the same claims. We affirm.

This suit is a sequel to our decision in *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 427 A.2d 866 (1980), in which we affirmed the issuance of a writ of mandamus by the trial court directing the Waterbury assessor to file the grand list of October 1, 1979, by the statutory deadline, January 31, 1980. After the list was filed a large number of appeals were filed by dissatisfied taxpayers seeking review of their assessments. The board, pursuant to General Statutes § 12-117, obtained an extension for one year of the time for

completing its duties. In the course of hearing the appeals, most of which had been taken by residential property owners, the board decided to exercise its authority under General Statutes § 12-111 to "equalize and adjust" valuations by reviewing the assessments of all the commercial and industrial properties on the grand list, about 3000 in number. The board then entered into a written contract with Lanese in which he was employed to review and submit written opinions of fair market value as of October 1, 1979, for each commercial and industrial property on the list. It is this contract which the plaintiff challenges.

General Statutes § 12-2c[1] provides that "no revaluation company shall perform any valuation for a municipality for assessment purposes unless such company is certified by the board of assessment advisors." The term "revaluation company" is defined in the statute to mean "any person, firm, association, corporation or other entity, other than a municipal assessor or assistant assessor, which performs property valuations for a municipality for assessment purposes." The trial court concluded that the work to be performed by Lanese under his contract with the board of tax review did not constitute the making of valuations "for assessment purposes" and that § 12-2c was, therefore, inapplicable.

---

[1] General Statutes § 12-2c provides as follows: "Sec. 12-2c. CERTIFICATION OF REVALUATION COMPANIES. 'Revaluation company' shall mean any person, firm, association, corporation or other entity, other than a municipal assessor or assistant assessor, which performs property valuations for a municipality for assessment purposes. On and after July 1, 1978, no revaluation company shall perform any valuation for a municipality for assessment purposes unless such company is certified by the board of assessment advisors. Such certification shall be renewed every five years."

There is support for the interpretation of the trial court in the statutory language. The exception created for "a municipal assessor" or "assistant assessor" indicates that the legislature was concerned that the restriction imposed might otherwise be construed to disqualify those officials from performing their statutory duties. The failure to include the board of tax review in this exception indicates that the legislature did not consider that body to be an "entity . . . which performs property valuations . . . for assessment purposes" within the scope of § 12-2c, although the function of the board does require it to make such valuations in a broader sense. Since it is obvious that § 12-2c was never intended to impose the requirement of certification upon members of the board of tax review in performing their statutory duties, we conclude that the term "valuations . . . for assessment purposes" refers only to the functions of the assessor in preparing the assessment list. The statute does not apply to the board of tax review or to anyone, such as the defendant Lanese, who is chosen to assist that board in its work.

The legislative history lends some additional support to our interpretation of § 12-2c. The source of the proposal to require certification of revaluation companies appears to have been a report[2] of the governor's commission on tax reform in 1972 which discussed the practice followed by most of the towns in the state of employing "appraisal companies to conduct their general revaluations," and recommended certification as a means of ensuring that such companies would be competent. Section

[2] Governor's Commission on Tax Reform. Report submitted to Governor Thomas J. Meskill, Vol. 2, "Local Government," December 18, 1972, p. 105.

12-2c was included as one provision of Public Acts 1974, No. 74-275, entitled "An Act Concerning Uniform Municipal Assessment Procedures and the Establishment of a State Board of Assessment Advisors." The bill established within the office of the state tax commissioner a "municipal assessment section, including a board of assessment advisers" whose duties included the development of "standards and tests for certifying revaluation companies and their employees." See General Statutes §§ 12-2a and 12-2b. Legislative comment upon the passage of the bill referred to improving the quality and efficiency of assessment practices.[3] It is significant that there is no reference to the board of tax review in any of this background and that the focus of attention was upon municipal assessors and, particularly, the companies employed to perform periodic general revaluations as required by General Statutes § 12-62.

It is also persuasive that the board of assessment advisors created by the act, which is charged with the duties of assisting in the promotion of uniform municipal assessment practices, the recommendations of such practices and procedures, and the issuance of uniform guidelines pertaining to property valuation, appraisal and assessment, has never suggested that boards of tax review be restricted to certified revaluation companies in the employment of professional assistance. See General Statutes § 12-2b. The plaintiff does not dispute the testimony of the state official, who was familiar with the practices of the board of assessment advisors and the certification of revaluation companies, that the board has never viewed § 12-2c as applicable to

[3] Connecticut General Assembly Proceedings. 17 H. R. Proc., Pt. 11, 1974 Sess., p. 5627; 17 S. Proc., Pt. 5, 1974 Sess., p. 1877.

a board of tax review and that there are only twenty-four such companies in the state. "In the construction of statutes, great deference is to be accorded to the construction given the statute by the agency charged with its enforcement." *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 473, 370 A.2d 1011 (1976); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975). The impracticality of confining the selection of appraisers to assist the boards of tax review in the 169 towns of the state to the relatively small number of certified revaluation companies available also militates against an overly broad construction of § 12-2c. "Courts must assume that the legislature intended a reasonable and rational result and must, when possible, construe statutes accordingly." *Masone* v. *Zoning Board,* 148 Conn. 551, 556, 172 A.2d 891 (1961).

The remaining contention of the plaintiff, that the work to be performed by Lanese under the contract in reviewing the valuations of all of the commercial and industrial properties in Waterbury has no reasonable relationship to the function of the board of tax review in equalizing assessments, is essentially a claim that the evidence or the subordinate facts do not support the contrary conclusion of the trial court. There is no dispute about the underlying facts, however. After the grand list was filed a large number of appeals, approximately 5000, were filed with the board of tax review, of which all but 100 to 150 involved assessments upon residential properties. The normal number of appeals heard by the board in years where no general revaluation has occurred is between 250 and 300. The board of tax review sought to determine whether the burden of taxation had been unfairly shifted to residential

properties. Since only a relatively small number of commercial and industrial property owners were sufficiently dissatisfied with their assessments to file appeals, it was decided to hire Lanese to review all of these assessments. No similar review of the residential property assessments was made because of the large number of appeals to be heard and because the board viewed the problem to be one of relative overvaluation of residential property, which could be reviewed during the appeal process.

The valuation opinions furnished by Lanese are used to identify commercial and industrial properties which may be underassessed. The taxpayers owning such properties are summoned before the board and given an opportunity to be heard before any action is taken upon their assessments.

The plaintiff concedes that the board of tax review, in addition to its duty of hearing appeals from dissatisfied taxpayers, has the separate function of equalization. "Such board may equalize and adjust the valuations and assessment lists of such town . . . ." General Statutes § 12-111. Its claim is that equalization is necessary only where assessments are made by several different persons who may not use the same standards, and that it is unnecessary where the assessment is set by a single assessor, as in Waterbury. See *Middletown* v. *Berlin,* 18 Conn. 189, 197 (1846). We are not convinced that the fact that one person, the assessor, ultimately approves all of the assessments on the grand list is any real assurance that uniform standards have been followed, since it appears that the assessor relied in large part upon the appraisals furnished by an independent appraisal firm, presumably a certified revaluation company, which had

contracted to assist the assessor in making the decennial revaluation required by General Statutes § 12-62. It is also conceivable that a single individual might use different standards in appraising residential as compared to business property.

Another claim, that the board has simply introduced a new appraiser into the picture for the purpose of making another reassessment, is not supported by the facts found. There is nothing in the record or the evidence which would have compelled such a conclusion by the trial court. Our review indicates adequate support for the conclusion reached by the trial court that the services to be performed under the challenged contract with the defendant Lanese are reasonably related to the statutory functions of the board of tax review so that the board was authorized to make the contract.

There is no error.

In this opinion the other judges concurred.