RAFFAELA TRAMONTANO ET AL. *v.*
BIAGIO DILIETO ET AL.

MARIA J. IZZO ET AL. *v.* BIAGIO DILIETO ET AL.
(11698)

PETERS, PARSKEY, SHEA, GRILLO and SPONZO, Js.

Argued January 10—decision released March 13, 1984

*Victor P. Fasano* and *Jonathan J. Einhorn,* with
whom, on the brief, was *Earl I. Williams,* for the appel-
lants (plaintiffs in each case).

*Charles G. Albom,* corporation counsel, with whom, on the brief, was *Karen Nash,* deputy corporation counsel, for the appellees (defendants in both cases).

SHEA, J. In these actions the plaintiffs as taxpayers of the city of New Haven sought a declaratory judgment that the tax rate of 74.29 mills for the fiscal year July 1, 1982, through June 30, 1983, voted by the board of aldermen was illegal and that the lawful rate was 73.30 mills as originally recommended by the board of finance. An injunction against collection of taxes at the higher rate and a writ of mandamus to implement the lower rate was also claimed, as well as general equitable relief. The court rendered judgment for the defendants, the city of New Haven and various city officials, and the plaintiffs have appealed.

The principal issue presented by the appeal is whether certain provisions of the charter of the city of New Haven relating to the date when the budget estimates and tax rate recommendation of the board of finance are to be submitted to the board of aldermen are mandatory, so that any revision thereof made after such date, for whatever reason, becomes a nullity. We conclude that, where there is sufficient justification, the board of finance may modify its submission to the board of aldermen even after expiration of the time prescribed by the charter. Accordingly, we find no error.

The controlling provision of the New Haven charter is § 58,[1] which establishes the procedure and timetable

[1] Section 58 of the charter of the city of New Haven provides as follows: "Sec. 58. BUDGETARY PROCEDURES.

"In the months of March and April in each year, the board of finance shall make estimates of the amount of money necessary to be appropriated for the expenses of said city for the fiscal year next ensuing, beginning July first, and of the rate of taxation required to meet the same, and shall classify such expenses under appropriate heads and departments. In the preparation of such estimates, said board of finance shall give notice to each board or department of a definite time when and place where it

for the adoption of the city's annual budget and rate of taxation. In March and April of each year the board of finance is required to estimate the amount of money necessary for the expenses of the city for the fiscal year beginning in July as well as the rate of taxation needed to meet such expenses. The estimated expenditures and the recommended tax rate "shall be published" once in the newspapers by the first Monday of April. Within seven days after this publication, a duly noticed public hearing must be held on the budget and tax rate proposed by the board of finance. Thereafter, the board's proposal, "including all revisions made by said board of finance after said public hearing, shall be submitted to the board of aldermen on or before the third Mon-

---

will meet to consider the needs of such board or department, and said board of finance shall recommend such tax upon the ratable estimates within the limits of said city as it shall deem necessary to meet such expenses. The board of finance in recommending said estimates, appropriations and rate of taxation shall not estimate the receipts from current taxes for any one year in excess of one per cent less than the actual rate of collection during the last preceding fiscal year, on the amount laid on the estimated grant list at the rate recommended. Such estimates and the rate of taxation recommended shall be published once in each of the daily newspapers in said city by the first Monday of April and, within seven days after such publication, the board of finance shall hold a public hearing thereon. Notice of such hearing shall be given by publication at least seven days before the date of such hearing in each of the daily newspapers in said city. Such notice shall state the time and place of such hearing, and that copies of the proposed estimates, appropriations and rate of taxation may be seen at a designated place. Such estimates and the rate of taxation recommended, including all revisions made by said board of finance after said public hearing, shall be submitted to the board of aldermen on or before the third Monday of April and, within ten days after such submission, shall be published once in each of the daily newspapers in said city. After such publication and on or before the first Monday of June next succeeding, such board of aldermen shall hold a public hearing on such estimates, total appropriations and rate of taxation, consider and act upon such estimates and such total appropriations and rate of taxation so reported by the board of finance to said board of aldermen shall be final, and the total appropriations and rate of taxation shall be the legal total appropriations and the legal rate of taxation for said city, unless decreased by a majority vote of the entire board of aldermen; but while said board of aldermen shall not have the power to increase the total appropriations as recommended by the board of finance,

day of April . . . ." A public hearing on the recommended budget and tax rate must be held by the board of aldermen, which must act thereon no later than the first Monday of June. The aldermen are empowered to decrease the total of the appropriations recommended by the board of finance, as well as the corresponding tax rate, but may not increase them. The total amount of appropriations must not exceed the estimated income for the fiscal year. Upon failure of the aldermen to act by the first Monday of June, "the estimates, appropriations and rate of taxation reported by the board of finance shall be final."

As the trial court found, the original budget of the board of finance with total appropriations of $134,306,502 and a tax rate of 73.30 mills for the

it shal [sic] have the power, by a majority vote of the entire board, to increase and decrease individual items of appropriations; said board of aldermen shall not have power to increase the rate of taxation as recommended by the board of finance, nor shall said board of aldermen reduce any item fixed by said board of finance for the payment of interest or principal of the municipal debt, but the total amount of such annual appropriations for any year shall not exceed the estimated income for that year nor shall any city or department officer or board of commissioners of said city make any expenditures except for the objects and purposes specified by said board of aldermen nor shall any city or department officer or board of commissioners of said city incur any liability or expense by contract or otherwise for which said city shall be responsible in excess of the appropriations so made by said board of finance and said board of aldermen. If on or before the first Monday of June next succeeding the submission to the board of aldermen of the estimates, appropriations and the rate of taxation recommended by the board of finance said board of aldermen shall fail to consider and act upon such estimates and such appropriations and rate of taxation reported by the board of finance, then the estimates, appropriations and rate of taxation reported by the board of finance shall be final and the appropriations and rate of taxation shall be the legal appropriations and the legal rate of taxation for said city for the ensuing year. The board of finance, upon the recommendations of the board of aldermen, may make appropriations for public receptions, parades, concerts and celebrations to an amount not exceeding a combined total of six thousand dollars for said events in any one year. No amount appropriated for any purpose, whether general or special, shall be used or appropriated for any other purpose except the same be authorized by the board of finance."

July 1, 1982 through June 30, 1983 fiscal year, following the necessary publication and public hearing, was submitted to the board of aldermen on April 16, 1982, three days before "the third Monday of April" as provided by the charter. Public hearings on this budget were held by the aldermen between April 21, 1982, and May 12, 1982.

On May 18, 1982, the board of finance learned that its budget estimate of $19,572,539 to be received from the state during the fiscal year was $510,539 too high and that a utility bill of $244,310.04 for electric service to the New Haven Coliseum had to be paid in order to avoid cessation of electricity supplied to the Coliseum. The board also had become aware that because of the action of the board of aldermen on April 19, 1982, the program of services to the elderly was underfunded in the budget which it had submitted before that date by $214,000. On May 20, 1982, the board of finance amended its estimated budget to reflect the reduction in anticipated revenues and the two additional expenditures, resulting in a revised total outlay and a new tax rate of 74.30 mills. The board of aldermen held a public hearing on the amended budget on May 27, 1982, and approved it on June 7, 1982, the first Monday of that month, as prescribed by the charter. On June 15, 1982, the mayor signed the budget voted by the aldermen.

The only significant challenge made by the plaintiffs to the facts as found by the trial court concerns whether the board of finance discovered or reasonably should have discovered the items omitted or incorrectly stated in the budget proposal before it was submitted. Our review of the evidence relating to these matters indicates sufficient support for the finding of the court that a unique problem confronted the board of finance because of the information they received after the date specified by the charter for submission of the budget,

which had already been transmitted to the board of aldermen. The trier was not bound to credit the testimony of the plaintiffs' witnesses to the effect that the board should have been aware of the deficiencies in its original proposal at some earlier time. In our view, even if greater prescience was called for, the board remained under a continuing duty to submit a balanced budget and to that end had authority to make the necessary revisions.

In this appeal the plaintiffs focus[2] upon the failure of the defendants in adopting the 1982—1983 budget to comply with the charter provision specifying that the "estimates and the rate of taxation recommended, including all revisions made by said board of finance after said public hearing, shall be submitted to the board of aldermen on or before the third Monday of April," which was April 19, 1982. It cannot be disputed that the amendment to the original budget made by the board of finance on May 20, 1982, deviated from this charter provision, as the trial court found. As a consequence, the plaintiffs contend, the only lawful budget and tax rate was that originally submitted by the board of finance. That budget became effective automatically, they argue, because of the lack of any action upon it in its unrevised form pursuant to the charter provision that failure of the aldermen "to consider and act upon such estimates and such appropriations and rate of taxation reported by the board of finance," by the first Monday of June makes the budget submitted by the board of finance final.

---

[2] In the trial court the plaintiffs also stressed the failure of the board of finance to hold a public hearing on the revisions to the budget before they were sent to the board of aldermen on May 20, 1982. The board of aldermen, which had previously concluded its public hearings on the original budget, held an additional public hearing upon the amended budget on May 27, 1982. The charter does not restrict the power of the board of finance to revise the budget proposal after presentation at the public hearing before the board of finance or require it to hold a further public hearing on those revisions.

The trial court, recognizing that the budget revisions made by the board of finance did not meet the time schedule prescribed by the charter, held that the provisions involved were not mandatory but merely directory. We agree.

"For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory." 2A Sutherland, Statutory Construction (4th Ed. Sands) § 57.19. Unless there is reason to believe that the legislature intended that the duty not be performed at all except within the time prescribed or that the time restriction should be considered a limitation upon the power of the tardy officer, failure to act within the time specified should not invalidate the action taken. Id. "It is of course difficult to lay down a general rule to determine in all cases when the provisions of a statute are merely directory and when mandatory or imperative, but, of all the rules mentioned, the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial — to matter of convenience or of substance." *Gallup* v. *Smith,* 59 Conn. 354, 358, 22 A. 334 (1890); see *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 130, 394 A.2d 731 (1978).

The New Haven charter divides the budget making authority between the board of finance and the board of aldermen. The aldermen may reallocate the total amount of appropriations recommended by the board of finance, increasing or decreasing separate items, and it may decrease, but not increase, the total. An overriding consideration is that "the total amount of such annual appropriations for any year shall not exceed the estimated income for that year." Once the board of

finance realized that its original proposal violated this charter provision, which must be deemed an essential requirement for a proper budget; see General Statutes § 7-344; *Moore* v. *Stamford,* 14 Conn. Sup. 258, 261 (1946); it had a duty to correct its original proposal by making the necessary changes, as it did. The fact that these revisions were made after the date set by the charter for submitting the budget to the board of aldermen did not deprive the board of finance of its power to act in fulfillment of its duty to submit a balanced budget. "Suppose the [board] neglected this duty *intentionally;* would not a *mandamus* lie to compel them to discharge it? . . . And would it be a good answer by them that the time had elapsed?" (Citation omitted, emphasis in original.) *Colt* v. *Eves,* 12 Conn. 243, 253 (1837).

On previous occasions we have held that acts of a public official performed at a time beyond the limit prescribed are nonetheless effective. *State ex rel. Arcudi* v. *Iassogna,* 165 Conn. 203, 205, 332 A.2d 90 (1973) (appointment of unemployment commissioner after expiration of date prescribed by statute); *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 554, 235 A.2d 643 (1967) (decision rendered by zoning board of appeals after time limited by statute); *Colt* v. *Eves,* supra, 252–55 (selection of names on jury list after date prescribed). Despite the imperative "shall," which is used in setting the date for submission of the board of finance proposal, as well as throughout § 58 of the charter, we are persuaded that the legislature never intended that failure of the board of finance to comply with this time limit should nullify any subsequent action taken. This court has consistently shown "a disposition to look through the literal meaning of words and forms of procedure to the essential purposes to be served." *Conners* v. *New Haven,* 101 Conn. 191, 198, 125 A. 375 (1924). The use of the word "shall," though significant, does not invariably create a mandatory duty

because statutes must be construed as a whole to ascertain the legislative intention. *State ex rel. Arcudi* v. *Iassogna,* supra, 204; *Donohue* v. *Zoning Board of Appeals,* supra, 554; *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 67, 82 A.2d 345 (1951).

There is no error.

In this opinion the other judges concurred.