## ALBERT BROTHERS, INC. *v.* CITY OF WATERBURY
## (12294)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued November 14, 1984—decision released January 22, 1985

*Thomas K. McDonough,* corporation counsel, for the appellant-appellee (defendant).

*John C. Bullock,* for the appellees-appellants (plaintiffs).

SHEA, J. This appeal arises out of the revaluation of real property in the city of Waterbury on the grand list of October 1, 1979, pursuant to General Statutes § 12-62,[1] requiring municipal assessors to revalue all property within the municipality every ten years. We initially addressed this controversy in *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 427 A.2d 866 (1980) *(CCGW I)*, in which we upheld a trial court order requiring the city of Waterbury to obey the mandate of § 12-62 by filing a revalued grand list within the time requirements of that statute. The assessor of the city of Waterbury did so,[2] but not before adding a uniform 28 percent increase to the assessment of approximately 2500 commercial and industrial properties in Waterbury. The 28 percent figure was based on a sampling of approximately 300 properties actually assessed by the city. In *Chamber of Commerce*

---

[1] Section (a) of General Statutes § 12-62 provides: "Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years after each such revaluation, view all of the real estate of their respective municipalities, and shall revalue the same for assessment and, in the performance of these duties, except in any municipality where there is a single assessor, at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors."

[2] Actually, the assessor received a one month extension to February 29, 1980, within which to file the list, and he met this deadline. *Chamber of Commerce of Greater Waterbury, Inc.* v. *Waterbury,* 184 Conn. 333, 334, 439 A.2d 1047 (1981) *(CCGW III)*.

*of Greater Waterbury, Inc.* v. *Waterbury,* 184 Conn. 333, 439 A.2d 1047 (1981) *(CCGW III),* we concluded that the use of a uniform increase in assessment did not comport with the assessor's "statutory duty to determine the 'true and actual valuation' of each individual property. General Statutes § 12-64." Id., 338. We therefore upheld the trial court's order enjoining the city from levying taxes based on the 28 percent uniform increase in the assessment of the commercial and industrial properties.

The Waterbury board of tax review, to which appeals from the action of the assessor may be taken, also has the power unilaterally to "equalize and adjust the valuations and assessment lists" submitted by the assessor.[3] Once the uniform 28 percent increase was invalidated by our decision in *CCGW III,* the Waterbury board of tax review undertook to "adjust" the assessment of many of the commercial and industrial properties that would have been affected by the uniform increase. *Chamber of Commerce of Greater Water-*

---

[3] General Statutes § 12-111 delineates the powers of a board of tax review during its authorized meetings: "At such meeting any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes and any person to whom title to such property has been transferred since the assessment date, claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to such board of tax review, which shall determine all such appeals and report in writing the final determination of such appeals to each such person within one week after such determination has been made. Such board may equalize and adjust the valuations and assessment lists of such town and may increase the items of taxable property in the list of any person, or the number, quantity or amount of any such item, or add to any such list any taxable property or interest therein omitted by the assessors which should be added thereto; and may add to the assessment list the name of any person omitted by the assessors and owning taxable property in such town, and make a list for him, putting therein all property liable to taxation which it has reason to believe is owned by him, at the percentage of its actual valuation, as determined by the assessors in accordance with the provisions of sections 12-64 and 12-71, from the best information that it can obtain, and add thereto ten per cent of such assessment; but, before proceeding to increase the list

*bury, Inc.* v. *Lanese,* 184 Conn. 326, 328, 439 A.2d 1043 (1981) (*CCGW II*). Because this procedure involved so many properties, requiring considerable time on the part of the board, it requested and, on March 25, 1980, obtained permission pursuant to General Statutes § 12-117[4] to use for the 1980 tax year the 1978 grand

---

of any person or to add to the assessment list the name of any person so omitted, it shall mail to him, postage paid, at least one week before making such increase or addition, a written or printed notice addressed to him at the town in which he resides, to appear before such board and show cause why such increase or addition should not be made."

In *Chamber of Commerce of Greater Waterbury, Inc.* v. *Lanese,* 184 Conn. 326, 439 A.2d 1043 (1981) (*CCGW II*), we found that the Waterbury board of tax review was authorized to retain the services of an appraiser to assist it in its duty to "equalize and adjust" the valuations placed before it.

[4] "[General Statutes] Sec. 12-117. EXTENSION OF TIME FOR COMPLETION OF DUTIES OF ASSESSORS AND BOARD OF TAX REVIEW. The period prescribed by law for the completion of the duties of any assessor, board of assessors or board of tax review may, for due cause shown, be extended by the secretary of the office of policy and management for a period not exceeding one month, and in the case of the board of tax review in any town in the assessment year immediately following completion of a revaluation of all real property in such town and adjustment of the assessment list for such assessment year accordingly, such period may be extended by said secretary for a period not exceeding two months, provided such assessor or board shall submit to said secretary, not less than ten days before the expiration of the period prescribed by law, a request in writing, approved by the chief executive officer of the municipality, for such extension, setting forth the reasons therefor. If, in the opinion of the board of tax review and the chief executive officer, the number of appeals pending before such board is such as to preclude fair and equitable consideration of such appeals within the time restriction prescribed herein, the secretary of the office of policy and management may, upon the request in writing of the board of tax review approved by the chief executive officer, setting forth such opinion, authorize the assessors to assess all real estate according to the list in effect immediately prior to the list from which such appeals are taken, subject only to transfers of ownership, additions for new construction and reductions for demolitions. The list from which such appeals are taken shall then become the list for the assessment day next ensuing, subject only to such adjustments as are authorized by the board of tax review. If an extension is granted to any board of tax review, the time within which any taxpayer may appeal from the decision of such board and the time within which the town clerk shall transmit an abstract of the assessment lists shall be extended for a like period."

list in place of the 1979 revalued list.[5] During the following year, the board continued to hear appeals from the assessments on the 1979 list. The board also conducted show cause hearings concerning proposed adjustments to many commercial and industrial property valuations included in the list.

On February 25, 1981, the board requested and was granted an extension of time to April 1, 1981, within which "to complete its duties." No further extensions were requested or granted. The parties have stipulated that it was not until April 21, 1981, that the board increased the valuation of the properties owned by the named plaintiff in this action.[6] The April 21, 1981 increase has been carried forward into subsequent tax years.

This appeal from the April 21, 1981 adjustment by the board was certified as a class action in which the named plaintiff, Albert Brothers, Inc., represents "[a]ll taxpayers of the City of Waterbury whose assessments were increased by the Waterbury Board of Tax Review between April 1, 1981 and September 1, 1981." The plaintiff claims that any adjustments after April 1, 1981, exceeded the powers of the board of tax review because its statutory authority had expired.[7] On March 14, 1983, the plaintiff attempted to amend its appeal to include challenges to the 1981 and 1982 grand

---

[5] Thus the 1978 grand list was used for the 1979 tax year and, pursuant to the authority granted under General Statutes § 12-117, was also used for the 1980 tax year. The revalued 1979 list was not used until the 1981 tax year.

[6] The plaintiff owned two lots coming within the scope of this appeal. The parties stipulated and the trial court found that the lots, identified as lots 004 and 005 on Map 273, Block 020, of the assessor's records, were increased in value by the board from $18,200 and $27,000 to $22,260 and $36,120, respectively.

[7] In its appeal from the actions of the board of tax review, the plaintiff initially included a claim that the April 21, 1981 adjustment of the board resulted in an assessment in excess of the fair market value of the properties in question. At trial, however, the plaintiff declared that it would not

lists, claiming that the board's adjustment of the valuation on the list of 1979, being invalid, should not have carried over to subsequent tax lists. The trial court held invalid the actions of the board taken after April 1, 1981, increasing the valuations on the 1979 list, but refused to grant the plaintiff relief as to the lists for subsequent years. The city of Waterbury appeals from the judgment as to the invalidity of the board's adjustments to the 1979 list valuations, and the plaintiff cross appeals from the refusal to grant relief with regard to the 1981 and 1982 tax lists. We affirm.

I

General Statutes § 12-110 requires that a board of tax review "complete the duties imposed upon it" before the last business day in February each year.[8] The city of Waterbury does not deny that this statute would invalidate any action by the board after the expiration of its mandate. The city claims instead that when it received permission pursuant to General Statutes § 12-117 to substitute the 1978 grand list for the 1979 revalued list, it received an extension of time to work on the revalued list for as long as it took to complete

pursue this claim. Having done so, the plaintiff cannot now assert that it was prejudiced by the exclusion of evidence relating to the proper valuation of the properties. Such evidence has no relevance save with relation to the abandoned claim, and the plaintiff confirms in its brief that "the actual value of the properties was not put in issue."

[8] "[General Statutes] Sec. 12-110. SESSIONS OF BOARD OF TAX REVIEW. The board of tax review in each town, except as otherwise provided by special act, shall meet at least three times during the month of February and at least once in the month of September, annually, provided any meeting in the month of September shall be for the sole purpose of hearing appeals related to the assessment of motor vehicles, and shall give notice of the time and place of such meetings by posting it at least ten days before the first meeting in each such month on the public signposts in such town and publishing it in some newspaper published therein or, if no newspaper is published in such town, in a newspaper having a general circulation in such town. Such meetings shall be held on business days, which may be Saturdays, the last not later than the last business day of each such month, on or before which date such board shall complete the duties imposed upon it."

consideration of the valuations contained therein, provided the list was ready in time to complete the budgetary process of the city.[9] We do not agree. It is not necessary for us to determine whether § 12-117 would allow the granting of an extension similar to that now claimed by the city of Waterbury, as it is clear that no such extension was ever requested or approved. In its letter of March 21, 1980, to the commissioner of the department of revenue, then authorized by § 12-117 to grant extensions, the board of tax review requested only "an extension of one year's time in which to perform [its] duties."[10] Similarly, in *CCGW II*, supra, 327–28, we noted that the board had "obtained an extension for one year of the time for completing its duties." That the board recognized the limited nature of the extension is made abundantly clear by the fact that, at the expiration of the one year period referred to above, the board requested and was granted an additional "extension of time to April 1, 1981 . . . to complete its duties." Any adjustments ordered after that time were not within the period in which the board was authorized to act and hence were beyond its power.

There is nothing in this conclusion inconsistent with our recent decision in *Tramontano* v. *Dilieto*, 192 Conn. 426, 472 A.2d 768 (1984). In *Tramontano*, we relied on a presumption that the legislature intended time limitations on municipal taxing authorities to be direc-

---

[9] The defendant claims that the budgetary process of the city of Waterbury as established by the City Charter does not require the board of tax review to complete its duties and to submit the grand list to the board of finance before the end of April. The charter provides that the board of finance must complete its duties by the fourth week in April. Waterbury City Charter, Div. 2, § 1336 (c). It also provides that the budget must be voted upon by the board of alderman by the twenty-second of May. Waterbury City Charter, Div. 2, § 1338 (b).

[10] The reply of the commissioner of the department of revenue made no reference to extensions, but granted the board's request to substitute the 1978 list for the revalued 1979 list due to the number of appeals pending with regard to the latter list.

tory rather than mandatory, thus empowering the taxing authority to complete its function when the time has expired. We stated, however, that this presumption is overcome when "there is reason to believe that the legislature intended that the duty not be performed at all except within the time prescribed or that the time restriction should be considered a limitation upon the power of the tardy officer . . . ." Id., 432. By providing a particular method to procure extensions of time for a board of tax review to complete its duties, the legislature must have intended that the time limitations for action by the board be mandatory rather than merely directory. The provisions of § 12-117 delineating the method by which an extension may be obtained make little sense if a board of tax review may, without utilizing them, validly act beyond the time limit otherwise imposed. We reached a similar conclusion in *Reconstruction Finance Corporation* v. *Naugatuck,* 136 Conn. 29, 32, 68 A.2d 161 (1949), where we held that the existence of an express provision, now General Statutes § 12-60, allowing the correction of clerical errors after the time limitation imposed on a tax assessor or board of tax review excluded the possibility that corrections of substance may be made after the time limit had been reached. See also *Empire Estates, Inc.* v. *Stamford,* 147 Conn. 262, 263–64, 159 A.2d 812 (1960). There was no error in the judgment finding the increases ordered by the Waterbury board of tax review after April 1, 1981, to be invalid.

## II

In its cross appeal, the plaintiff asserts that the trial court erred in limiting relief to setting aside the adjustments to the 1979 revalued list, which was used for 1980 tax purposes. On March 14, 1983, the plaintiff filed a motion to amend its complaint to include a claim for relief with regard to the 1981 and 1982 tax lists, on which the valuation of the plaintiff's property had been

carried forward from the adjusted 1979 revalued list. The plaintiff characterizes the increased valuation resulting from the unlawful adjustment as a "continuing violation," claiming that the revaluations did not result from an independent assessment by the tax assessor. The record does not indicate that the trial court ever ruled on the motion to amend, though the court did, in its memorandum of decision, decline to order the relief requested.

General Statutes § 12-118 provides the statutory basis for appeals from the board of tax review. It states in part: "If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and *such applicant need not appear before the board of tax review to make such amendment effective.*"[11] (Emphasis added.) We assume

---

[11] General Statutes § 12-118 provides: "APPEAL FROM BOARD OF TAX REVIEW. Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and the pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application

that the amendment was allowed by the court pursuant to this statute since the court did decide the issues raised by the amendment on their merits.[12]

The plaintiff asserts that the last sentence of § 12-118 requires that the relief sought by the amendment be granted. This sentence provides that where an over-assessment is judicially corrected "[t]he amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased." There are two reasons why this provision, while facially supportive of the plaintiff's position, does not mandate the requested relief. First, the 1981 and 1982 tax lists, which contain the increased valuations complained of, were prepared by the tax assessor, allowing the inference that "the tax assessor [found] that the value of the applicant's property [had] increased . . . ." Gen-

as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[12] There is a substantial question regarding the timeliness of that part of the amendment seeking relief as to the 1981 list, which had been finalized more than a year before the motion to amend was made. Because of our disposition on the merits of this claim, we need not reach the timeliness issue.

eral Statutes § 12-118. The plaintiff argues that such an inference, if possible, would only show that the assessor acted unlawfully, since the assessor never personally valued the property, nor did he rely on a valuation prepared by a certified revaluation company in accordance with General Statutes § 12-2c.[13] In *CCGW II,* supra, we noted that "it is obvious that § 12-2c was never intended to impose the requirement of certification upon members of the board of tax review in performing their statutory duties . . . . The statute does not apply to the board of tax review or to anyone . . . who is chosen to assist that board in its work." Id., 329. The board is authorized by statute to "equalize and adjust" the valuations submitted by the assessor, necessarily empowering it to determine its own valuations. While this action of the board came too late to affect the 1979 revalued list, the opinion of the board as to the proper valuation of a property stands on a different footing from the opinion of any other party not certified as an appraisal company. We are not prepared to say that an assessor, whose work is subject to review by a board of tax review, is not justified in relying upon the considered recommendations of that entity in performing his duty if such recommendations are in accord with his own judgment.

The second reason why the last sentence of § 12-118 does not require the granting of relief as to the subsequent tax lists is apparent from the purpose of that sentence as expressed in the legislative history accompanying its passage. The bill containing this sen-

---

[13] "[General Statutes] Sec. 12-2c. CERTIFICATION OF REVALUATION COMPANIES. 'Revaluation company' shall mean any person, firm, association, corporation or other entity, other than a municipal assessor or assistant assessor, which performs property valuations for a municipality for assessment purposes. On and after July 1, 1978, no revaluation company shall perform any valuation for a municipality for assessment purposes unless such company is certified by the board of assessment advisers. Such certification shall be renewed every five years."

tence was similarly explained in both Houses of the General Assembly. "The purpose of the bill is to insure an equitable property tax for those whose assessments have been reduced by the court." 12 H. R. Proc., Pt. 2, 1967 Sess., p. 697 (statement of Rep. James P. McLoughlin); 12 S. Proc., Pt. 1, 1967 Sess., pp. 367–68 (statement of Sen. William J. Verriker). It is apparent that the assessments here are not being "reduced" in the sense that it would be inequitable for the plaintiff to pay taxes on a reasonably determined valuation of his property as contained in the 1981 and 1982 tax lists. The plaintiff abandoned at trial his claim that the valuations as adjusted by the board were in excess of the fair market value of his property.[14] The last sentence of § 12-118 was directed not at the situation presented here, but was intended to address the problem created when the actions of the assessor and the board result in an inequitably high tax, and the inequitable tax is carried forward on subsequent tax lists. Cf. *Farmers Grain Dealers Assn. of Iowa* v. *Woodward,* 334 N.W.2d 295 (Iowa 1983). General Statutes § 12-118 states that on appeal from the actions of the board of tax review, "[t]he court shall have power to grant such relief as to justice and equity appertains . . . ." There being no claim that the assessments charged on the 1981 and 1982 tax lists were inequitably high, we find no reason to provide the relief requested in the amendment. *Slosberg* v. *Norwich,* 115 Conn. 578, 162 A. 772 (1932).

There is no error.

In this opinion the other judges concurred.

---

[14] See footnote 7, supra.