JAMES E. WYSOCKI *v.* TOWN OF ELLINGTON

OLD LOT NO. 30, LLC *v.* TOWN
OF ELLINGTON
(AC 27427)
(AC 27428)

Bishop, Beach and Berdon, Js.

Argued February 7—officially released July 22, 2008

*James E. Wysocki*, pro se, the appellant (plaintiff in the first case).

*John H. Parks*, for the appellant (plaintiff in the second case).

*Mark R. Spurling*, for the appellee (defendant).

*Opinion*

BERDON, J. The plaintiffs, James E. Wysocki and Old Lot No. 30, LLC (Old Lot),[1] appeal from the judgments in favor of the defendant, the town of Ellington, dismissing the plaintiffs' tax appeals, brought pursuant to General Statutes § 12-119,[2] from the assessment of their properties for the grand list of October 1, 2000.[3] On appeal, the

[1] Although Wysocki and Old Lot brought separate appeals, we address these appeals in one opinion because both plaintiffs presented identical issues, submitted identical briefs and conceded at oral argument that the arguments as to Wysocki also would apply to Old Lot.

[2] General Statutes § 12-119 provides in relevant part: "When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[3] The court considered the plaintiffs' claims under § 12-119, entitled "Remedy when property wrongfully assessed." On appeal to this court, the plaintiffs claim that they also sought to advance claims under General Statutes § 12-117a. "There is a distinction between an excessive assessment and an illegal, unlawful or wrongful assessment. . . . General Statutes § 12-117a, formerly General Statutes § 12-118, is the avenue to review the amount of an assessment, and § 12-119 is the way to contest the taxability itself." (Citation omitted.) *Sun Valley Camping Cooperative, Inc. v Stafford*, 94 Conn. App. 696, 710 n.17, 894 A.2d 349 (2006). To the extent that the court's memorandum of decision does not address these claims under § 12-117a, they were either not presented or, if presented, were not decided. If the claims were presented to the court but not decided, the plaintiffs' failure to request an articulation renders the record inadequate for review. See *JCV Investment Group, Inc.* v. *Manjoney*, 56 Conn. App. 320, 322 n.1, 742 A.2d 438 (2000). Accordingly, we do not review any claims predicated on § 12-117a.

plaintiffs claim that the court improperly (1) concluded that they had failed to raise adequately a claim of equitable estoppel and (2) determined that the municipal tax assessor (assessor) properly had assessed the subject properties according to their highest and best use or, in the alternative, that procedural irregularities relating to the Ellington board of assessment appeals' (board) decision to increase the assessor's assessment rendered the increase illegal. We agree with the plaintiffs only as to their claim regarding the validity of the board's decision to increase the assessment. Accordingly, we affirm in part and reverse in part the judgments of the trial court.

The record reveals the following undisputed factual and procedural history. In 1991, Wysocki, who owned approximately thirty-four acres consisting of four contiguous parcels of 10.7, 8.08, 4.83 and 13.63 acres, filed an application with the assessor seeking to classify these four parcels as forest land. In accordance with the provisions of the property tax assessment scheme set forth in General Statutes §§ 12-107a through 12-107e, on September 5, 1991, the state forester designated the parcels as forest land. As a result of this designation, the assessor classified the land as forest land.[4] On July 20, 1999, Wysocki transferred the 13.63 acre parcel to Old Lot, a limited liability company that he had formed. The conveyance was not recorded immediately in the

---

[4] "The terms 'designation' and 'classification,' as used in the statutory scheme, refer to specific actions of the state forester and town assessors, respectively. The 'designation' of property as forest land requires the property owner to file a written application seeking the designation and a determination by the state forester that the property is so qualified. The 'classification' of designated property as forest land on the grand list of a municipality requires the property owner to file an application with the town assessor to obtain the preferential tax treatment afforded to such classified property. See generally General Statutes § 12-107d." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 131–32 n.17, 848 A.2d 451 (2004).

Ellington land records. Instead, Wysocki sought advice from the assessor as to whether he could transfer the 13.63 acre parcel to Old Lot without compromising the favorable tax treatment that he was receiving by virtue of the forest land classification. In response to Wysocki's inquiry, on January 12, 2000, the assessor sent a letter to Wysocki erroneously informing him that the transfer of the 13.63 acre parcel would have no adverse effect on the parcel's forest land designation, provided that Wysocki was the sole member of Old Lot. Wysocki subsequently recorded the conveyance.

On January 12, 2000, Wysocki filed an application with the assessor seeking to maintain the 13.63 acre parcel's forest land classification, listing the owner of the parcel as Old Lot. The assessor approved the application. On January 31, 2000, Wysocki and the assessor submitted an amended application to the department of environmental protection, division of forestry, seeking to designate the 13.63 acre parcel as forest land and to amend the existing forest land certificate to reflect the change of ownership. On February 22, 2000, the division of forestry informed Wysocki that a parcel must be at least twenty-five acres to qualify as forest land under General Statutes (Rev. to 1999) § 12-107b (b) and that because neither Wysocki nor Old Lot individually owned twenty-five acres, the forest land designation would be cancelled on April 25, 2000, unless further documentation was provided to the state forester demonstrating that cancellation was not warranted. On May 1, 2000, the state forester cancelled the forest land designation as to all four parcels of land.[5] The record reveals that the plaintiffs did not appeal from the state forester's decision as they were permitted to do under General Statutes § 12-107d.[6]

---

[5] Because the plaintiffs did not appeal from the state forester's decision, the propriety of that determination is not before us in these appeals.

[6] The record reveals that Wysocki corresponded with the state forester and, on April 9, 2001, Wysocki agreed to transfer the 13.63 acre parcel, deeded to Old Lot, back to himself. The state forester designated all four

The assessor subsequently issued a certificate of declassification, and the properties were assessed according to their highest and best use for the grand list of October 1, 2000. The plaintiffs appealed to the board from the assessor's decision to declassify the properties as forest land for the 2000 grand list. A hearing was scheduled for March 17, 2001. The board rendered a decision in which it further increased the assessment for the 13.63 acre parcel. The board made no changes to the assessor's assessments for the 10.7, 8.08 and 4.83 acre parcels but determined that the 13.63 acre parcel, which had frontage on Elderberry Lane, a roadway, was taxable as a building lot

Thereafter, the plaintiffs filed an appeal in the Superior Court pursuant to § 12-119 claiming, on various grounds, that the imposition of the tax was illegal. After a one day trial, the court issued a memorandum of decision dismissing the plaintiffs' appeals on January 12, 2006. These appeals followed.

I

The plaintiffs first claim that the court improperly concluded that they had failed to set forth adequately a claim of equitable estoppel. They argue that they raised a claim of equitable estoppel at trial by arguing that they had relied on representations made by the assessor that the transfer of the 13.63 acre parcel to Old Lot would not jeopardize the designation of the four parcels as forest land. We conclude that the record is inadequate to review the plaintiffs' claim.

The following additional procedural history is relevant to our review of the plaintiffs' claim. In its February 9, 2006 memorandum of decision, in response to the plaintiffs' motion to reargue, the court determined that

___

parcels as forest land. The land then was classified as forest land by the assessor for the 2001 grand list. For the 13.63 acre parcel, the date of classification was listed as April 9, 2001.

the plaintiffs had abandoned any claim of equitable estoppel. The court concluded that "[e]ven if an estoppel claim had been sufficiently raised, it would not have had a controlling effect on [the] court's original decision."

Our Supreme Court recently has reiterated the fundamental point that "[i]t is incumbent upon the [appellant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 731–32, 941 A.2d 309 (2008).

In the present case, it is unclear from the court's February 9, 2006 memorandum of decision why it concluded that even if the plaintiffs adequately had raised a claim of equitable estoppel, the assertion of that claim would not have had an effect on the court's decision.[7] Under these circumstances, the plaintiffs should have filed a motion for articulation to preserve an adequate record for review. See Practice Book §§ 61-10 and 66-5. "It is well established that [a]n articulation is appropriate where the trial court's decision contains some

___

[7] We note, however, that "estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters [in this case, the agent with authority was not the assessor, but rather the state forester]; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency [in this case, the loss could have been avoided because the appellant was given warning] . . . . As noted, this exception applies where the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents." (Internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 726, 917 A.2d 540 (2007).

ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, supra, 285 Conn. 732–33. Because the plaintiffs failed to seek an articulation from the court, we are unable to determine the legal or factual basis for the court's decisions. The record, therefore, is not adequate to review this claim.

## II

The plaintiffs next claim that the court improperly failed to conclude that the assessment of the subject parcels, according to their highest and best use, was manifestly excessive and illegal under § 12-119. Alternatively, the plaintiffs argue that even if the assessor properly declassified the properties, procedural irregularities rendered the board's decision to increase the assessment illegal. We agree as to the latter claim.

"The principles that govern a complaint filed pursuant to § 12-119 are not in dispute. In contrast to § 12-117a . . . which allows a taxpayer to challenge the assessor's valuation of his property, § 12-119 allows a taxpayer to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . . Our case law makes clear that a claim that an assessment is excessive is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue." (Citation omitted; internal quotation marks omitted.) *Tyler's Cove Assn.*,

*Inc.* v. *Middlebury,* 44 Conn. App. 517, 526, 690 A.2d 412 (1997).[8]

Here, the plaintiffs' claims are premised on the second category of § 12-119, which authorizes "claims that assessments are (a) manifestly excessive and (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property. . . . Cases in this category must contain allegations beyond the mere claim that the assessor overvalued the property. [The] plaintiff . . . must satisfy the trier that [a] far more exacting test has been met: either there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part. . . . Only if the plaintiff is able to meet this exacting test by establishing that the action of the assessors would result in illegality can the plaintiff prevail in an action under § 12-119. The focus of § 12-119 is whether the assessment is illegal. . . . The statute applies only to an assessment that establishes a disregard of duty by the assessors." (Citations omitted; internal quotation marks omitted.) Id., 526–27.

At the outset, we set forth our standard of review. In concluding that the plaintiffs failed to establish that the assessment was manifestly excessive under § 12-119, the court drew legal conclusions on the basis of its interpretation of appellate case law and provisions of the General Statutes. Therefore, our review is plenary. See *State* v. *Marsh & McLennan Cos.,* 286 Conn. 454, 464, 944 A.2d 315 (2008); *Waterbury Hotel Equity, LLC* v. *Waterbury,* 85 Conn. App. 480, 488, 858 A.2d 259, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004).

A

The plaintiffs claim that their property was assessed wrongfully according to its highest and best use, as

---

[8] See footnote 3 of this opinion.

opposed to forest land and, accordingly, that the resulting assessment was manifestly excessive. More specifically, the plaintiffs appear to argue that in concluding that the assessor correctly declassified the properties, the court improperly applied General Statutes §§ 12-96, 12-99, 12-107b, 12-107d and 12-504h.[9] Because the plaintiffs' claim relates to the propriety of the decision to cancel the property's forest land designation, a decision that was made by the state forester on May 1, 2000, and which is solely within his jurisdiction, we conclude that the plaintiffs' claim lacks merit.

The following factual and procedural history is relevant to our review of the plaintiffs' claim. In its January 12, 2006 memorandum of decision, the court determined that "the tax assessor declassified the plaintiffs' property on October 2, 2000, as a result of the cancellation of the forest land designation on May 1, 2000, by the state forestry division, and not because of the conveyance between Wysocki and Old Lot." Relying on our Supreme Court's decision in *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 130–34, 848 A.2d 451 (2004), the court concluded that "[o]nce the state forester determined that the forest land certification was cancelled on May 1, 2000, the tax assessor was statutorily required to issue a notice of this cancellation."

In the present case, because this claim relates to a decision that was made by the state forester on May 1, 2000, we conclude that the court did not, nor under the circumstances of this case was it required to, apply or construe §§ 12-96, 12-99, 12-107b, 12-107d or 12-504h. Rather, the court correctly determined that the assessor was required to declassify the land on the basis of the earlier, unchallenged decision rendered by the state

---

[9] Those statutes pertain to forest land designation and taxation.

forester. See *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* supra, 269 Conn. 130–34. Because *Carmel Hollow Associates Ltd. Partnership* clearly establishes that an assessor has no discretionary authority with respect to the classification of property as forest land; id., 137 ("state forester's actions are not reviewable by local authorities"); we conclude that the plaintiffs' claim regarding the court's purported application of these statutory provisions must fail.

B

The plaintiffs' remaining claims relate to the validity of the board's decision to increase the assessment for the 13.63 acre parcel abutting Elderberry Lane. More specifically, the plaintiffs claim that even if the court correctly determined that the assessor properly declassified the properties, the assessment was illegal because the board failed to comply with the notice provisions contained in General Statutes §§ 12-111 and 12-60. Additionally, the plaintiffs argue that the court improperly took judicial notice of the Ellington zoning regulations and improperly concluded that the Elderberry Lane parcel was taxable as a building lot. We agree with the plaintiffs that the board disregarded its mandatory duty to provide notice to the plaintiffs of its intention to increase the assessment at least one week before holding a hearing. Indeed, in its brief, the defendant concedes that "the board of assessment appeals did not notify [the] plaintiffs and invite them to appear at least one week before adding to [the] plaintiffs' assessment as required by § 12-111." Because this defect operates to invalidate the board's decision to increase the assessment, we decline to consider the remaining claims raised on appeal.

A review of the record reveals the following additional factual and procedural history. On February 7,

2001, the plaintiffs appealed to the board from the assessor's valuation of their properties. A hearing was scheduled for March 17, 2001. On May 2, 2001, the board released its decision designating the 13.63 acre parcel as a building lot abutting Elderberry Lane and increased the assessment without first providing notice as set forth in § 12-111 to the plaintiffs to show cause why the increase should not have been made. The court rejected the plaintiffs' claim that the board's failure to provide notice rendered the increase manifestly excessive and illegal, concluding that the notice provision contained in § 12-111 was directory, rather than mandatory, and that, in any event, the plaintiffs were provided with an opportunity to be heard on March 17, 2001.

Under § 12-111 (a), a municipal board of assessment appeals is vested with the authority to "increase or decrease the assessment of any taxable property . . . ." General Statutes § 12-111 (a). Before a municipal board of assessment appeals proceeds "to increase the assessment of any person . . . it shall mail to such person . . . at least one week before making such increase . . . a written or printed notice . . . to appear before such board and show cause why such increase . . . should not be made." General Statutes § 12-111 (a).

In resolving this matter, we begin by setting forth the legal principles relevant to our discussion. "In order to determine whether a statute's provisions are mandatory we have traditionally looked beyond the use of the word shall and examined the statute's essential purpose. . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience." (Citation omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 465, 692

A.2d 742 (1997). Moreover, our Supreme Court also has concluded that in the context of statutes relating to property tax assessment, when the statutory "provision is for the benefit and protection of the individual taxpayer . . . the provision is mandatory. . . . If the provision is mandatory it must be followed or the assessment will be invalid. . . . All provisions designed to give [the taxpayer] an opportunity of a review of the assessment, whether by the assessors themselves or on appeal from their conclusions, are exclusively in his interest." (Citation omitted; internal quotation marks omitted.) *Rocky Hill Inc. District* v. *Hartford Rayon Corp.*, 122 Conn. 392, 403, 190 A. 264 (1937).

Applying these principles in the present case, we conclude that the notice required by § 12-111 is a mandatory condition precedent to a municipal board's decision to increase a property tax assessment. The clear and unambiguous language of § 12-111 suggests that its notice provision was intended to provide a taxpayer with notice of the board's intention to increase a taxpayer's assessment and an opportunity to be heard on that particular issue before the board acts to implement the increase. Although the record reveals that the board scheduled a hearing for March 17, 2001, the defendant concedes that the plaintiffs were not provided with any notice of the board's intention to increase the assessment prior to this hearing. Even if the plaintiffs participated in a hearing on March 17, 2001,[10] the board's failure to provide the plaintiffs with notice prevented the plaintiffs from preparing any objections relating to the propriety of the board's intention to increase the assessment. Moreover, the record reveals that the board received a memorandum prepared by the town planner that was dated April 4, 2001. In this memorandum, the

---

[10] The return of record contains no evidence in the form of a transcript of, or minutes taken during, a hearing before the board of assessment appeals.

town planner opined that the 13.63 acre Elderberry Lane parcel constituted a building lot under the Ellington zoning regulations. To the extent that the receipt of this memorandum prompted the increase of the assessment, under § 12-111, an additional hearing was necessary to give the plaintiffs an opportunity to be heard on this issue. Accordingly, we conclude that the notice by the board under § 12-111 is mandatory, rather than directory, and because notice was not provided, the board's decision to increase the assessment of the 13.63 acre parcel was illegal within the meaning of § 12-119.

The judgments are reversed only as to the board's increase of the assessment for the 13.63 acre parcel and the case is remanded with direction to render judgments sustaining the plaintiffs' appeals as to that particular claim. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.