******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILTON CAMPUS 1691, LLC *v.* TOWN OF WILTON
# WILTON RIVER PARK 1688, LLC *v.* TOWN OF WILTON
# WILTON RIVER PARK NORTH, LLC *v.*
# TOWN OF WILTON
## (AC 40697)

DiPentima, C. J., and Moll and Bishop, Js.

*Syllabus*

The plaintiff property owners filed six appeals from the decisions of the Board of Assessment Appeals of the defendant town of Wilton denying their appeals from the town's tax assessments of the plaintiffs' properties. Pursuant to statute (§ 12-63c [d]), the plaintiffs were required to provide the assessor with annual income and expense reports regarding their properties by June 1, 2014. The defendant received those reports past the deadline but failed to add any late filing penalties, pursuant to § 12-63c (d), before taking the oath in signing the grand list on January 1, 2015. Instead, as had been his practice, the assessor imposed late filing penalties on the plaintiffs retroactively, pursuant to the statute (§ 12-60) that governs corrections to the grand list due to clerical omission or mistake, and issued certificates of change for the subject properties in April, 2015. Thereafter, the plaintiffs appealed to the board, which denied their appeals, and the plaintiffs appealed to the Superior Court, where the six appeals were consolidated and tried together. Subsequently, the trial court rendered judgments in favor of the defendant, from which the plaintiffs appealed to this court. The trial court concluded that although the assessor had violated the statute (§ 12-55 [b]) that requires the assessor to make any assessment required by law prior to signing the grand list, the only redress for the assessor's failure to comply with the provisions of § 12-55 (b) was to postpone the right of the plaintiffs to appeal the action to the assessor until the succeeding grand list, and that the penalty prescribed for in § 12-63c (d) makes no provision for the removal of the penalty imposed by the legislature, regardless of the action taken by the assessor. *Held:*

1. The trial court erred in concluding that although the assessor had no statutory authority to impose late penalties after the taking the oath, the plaintiffs were without redress beyond the postponement of the right to appeal because § 12-63c did not expressly provide for the removal of the unlawful penalties: pursuant to § 12-55 (b), the imposition of a late filing penalty constitutes an assessment required by law and, as such, it must be made by the assessor prior to taking the oath, and, therefore, because the assessor did not have the statutory authority to impose the late filing penalties after he took the oath, the late adjustments were invalid and prevented any recovery of taxes based thereon; moreover, the defendant's claim that the language in § 12-55 (a), which does not explicitly reference the penalties under § 12-63c (d) as being a required penalty that must be included in the grand list, demonstrated a legislative intent to exclude, by implication, a late penalty under § 12-63c (d) as a required assessment was unavailing, as § 12-55 (a) governs the publication of grand lists and specifies what they reflect for public inspection, whereas § 12-55 (b) governs the timing of when the assessor shall equalize the assessments of property in the town and make any assessment omitted by mistake or required by law, and the defendant's position was untenable because it assumed that the assessor had the authority to add § 12-63c (d) late penalties, at any time and for an indefinite period, after signing the grand list for a particular year, which would lead to an absurd or unworkable result.

2. The trial court properly concluded that the delayed imposition of the late filing penalties did not correct a clerical omission or mistake, and, therefore, § 12-60 did not apply so as to permit the retroactive adjustment to the assessments on the basis of the late filing penalties; because the assessor's omission of the late filing penalties from the 2014 grand list at the time he signed it was of a deliberate nature, in that the assessor's practice had been to assess, pursuant to § 12-60, any late filing penalties under § 12-63c (d) retroactively, and that at the time the assessor took

the oath on the grand list, he knew that he had received the plaintiffs' 2013 income and expense reports after the June 1, 2014 deadline and delayed imposition of the late penalties until approximately three months after he signed the 2014 grand list, the omission, although mistaken, was deliberate and intentional, not clerical and, therefore, was an error of substance that could not be corrected under § 12-60.

3. The defendant could not prevail on its claim, raised as an alternative ground for affirming the judgment, that the plaintiffs were not harmed by the assessor's imposition of the late filing penalties because they were able to seek review of the assessor's imposition of the penalties by appealing to the board; because the assessor was without statutory authority after he signed the grand list to impose the late penalties, which were null and void, and because the assessor could not collect a tax on an assessment that was untimely adjusted by the imposition of late filing penalties, this court could not conclude that the statutorily unauthorized delay of the imposition of the late filing penalties was a mere procedural irregularity that, if uncorrected, would result in no harm to the plaintiffs.

Argued October 15, 2018—officially released August 13, 2019

*Procedural History*

Appeals from the decisions of the defendant's Board of Assessment Appeals denying the plaintiffs' appeals from the allegedly improper retroactive assessment of tax penalties on certain of the plaintiffs' real property, brought to the Superior Court in the judicial district of New Britain, Tax Session, where the appeals were consolidated and tried to the court, *Hon. Arnold W. Aronson*, judge trial referee; judgments for the defendant, from which the plaintiffs filed a joint appeal to this court. *Reversed; judgments directed.*

*Matthew T. Wax-Krell*, with whom were *Marci Silverman* and, on the brief, *Denise P. Lucchio*, for the appellants (plaintiffs).

*Barbara M. Schellenberg*, with whom were *Jonathan S. Bowman* and, on the brief, *Joseph D. Szerejko*, for the appellees (defendants).

*Opinion*

MOLL, J. The principal issue in this real estate joint tax appeal is whether the trial court properly rendered judgments in favor of the defendant, the town of Wilton, despite having concluded that the defendant's tax assessor (assessor) violated General Statutes § 12-55 (b) when he added late filing penalties pursuant to General Statutes § 12-63c (d)[1] against the plaintiff property owners[2] three months after taking and subscribing to the oath on the 2014 grand list. The plaintiffs appeal from the judgments of the trial court rendered in favor of the defendant. In their joint appeal, the plaintiffs claim that the trial court erred by rendering judgments in favor of the defendant despite having properly concluded that the assessor acted without statutory authority when he added the late filing penalties to the 2014 grand list after taking and subscribing to the oath. We agree. Accordingly, we reverse the judgments of the trial court.

The record and the parties' stipulations of fact[3] reflect the following facts and procedural background. On or before April 15, 2014, pursuant to § 12-63c (a), the assessor requested from the plaintiffs annual income and expense reports for the year 2013 for their respective subject properties and provided them with the requisite forms. At all times from April 15, 2014 through October 26, 2016,[4] including October 1, 2014, the date of the grand list at issue, the plaintiffs owned their respective subject properties. Pursuant to § 12-63c (a), the plaintiffs were required to submit their 2013 income and expense reports to the assessor on or before June 1, 2014. On June 2, 2014, the plaintiffs sent, by Federal Express overnight mail, their 2013 income and expense reports, along with a cover letter dated May 30, 2014, to the assessor, who received them on June 3, 2014.

On or before January 31, 2015, the assessor took the oath on the 2014 grand list,[5] at which time he (1) knew that he had received the plaintiffs' income and expense reports after the June 1, 2014 deadline, and (2) did not add any late filing penalties to the 2014 grand list with respect to the subject properties. The assessor's practice has been to assess, pursuant to General Statutes § 12-60,[6] any late filing penalties under § 12-63c (d) retroactively, *after* signing the grand list for a given year.[7]

On April 29, 2015, the assessor issued certificates of change for the subject properties in connection with the 2014 grand list and sent them, respectively, to the plaintiffs' last known addresses. The certificates of change each contain the following prefatory language: "By authority of [§] 12-60 of the Connecticut General Statutes, the Assessor hereby adjusts the assessment list of 2014." Each certificate of change identifies, among other things, the "original" assessment amount, the "adjustment" amount reflecting the late filing pen-

alty (i.e., approximately 10 percent of the original assessment),[8] and the "current" assessment amount (i.e., the original assessment amount plus the adjustment amount). The certificates of change reflect no exemptions.

Pursuant to General Statutes § 12-119, to the extent that it was necessary to do so, the plaintiffs timely filed respective appeals from the assessor's actions to the Superior Court.[9] See *Wilton River Park 1688, LLC* v. *Wilton*, Superior Court, judicial district of New Britain, Docket No. CV-15-6030507-S; *Wilton Campus 1691, LLC* v. *Wilton*, Superior Court, judicial district of New Britain, Docket No. CV-15-6030508-S; *Wilton River Park North, LLC* v. *Wilton*, Superior Court, judicial district of New Britain, Docket No. CV-15-6030509-S. Pursuant to General Statutes § 12-111,[10] the plaintiffs also timely filed appeals to the Wilton Board of Assessment Appeals (board), which, subsequent to a hearing on April 5, 2016, denied their appeals, making no changes to the certificates of change. Pursuant to General Statutes § 12-117a,[11] the plaintiffs filed timely appeals from the actions of the board to the Superior Court. See *Wilton River Park 1688, LLC* v. *Wilton*, Superior Court, judicial district of New Britain, Docket No. CV-16-6034627-S; *Wilton Campus 1691, LLC* v. *Wilton*, Superior Court, judicial district of New Britain, Docket No. CV-16-6034566-S; *Wilton River Park North, LLC* v. *Wilton*, Superior Court, judicial district of New Britain, Docket No. CV-16-6034565-S.

The six appeals filed in the Superior Court were consolidated and adjudicated together. The parties submitted memoranda of law regarding the legal issues, as well as the stipulations of fact, accompanied by stipulated exhibits with numerous appended exhibits, which furnish the entire factual basis for the judgments of the trial court.

On July 12, 2017, the court issued its memorandum of decision, ruling in favor of the defendant. As an initial matter, the court rejected the defendant's argument that the assessor had the authority to impose the late filing penalties after signing the 2014 grand list pursuant to § 12-60, which provides in relevant part: "*Any clerical omission or mistake* in the assessment of taxes *may be corrected* according to the fact by the assessors or board of assessment appeals, *not later than three years following the tax due date* relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment." (Emphasis added.) Citing *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 595–96, 489 A.2d 1034 (1985), the court reasoned that § 12-60 applies only to clerical errors, and not to errors of substance, and that, because the omission of the late filing penalties from the 2014 grand list at the time the assessor signed it was intentional, the assessor's delayed imposition of the late fil-

ing penalties "was by no means a clerical error."

The court went on to consider § 12-55 (b), which provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. . . ." The court emphasized the requirement in § 12-55 (b) that the assessor make any assessment "required by law" prior to signing the grand list. Because § 12-63c (d) provides that a property owner who fails to submit timely income and expense reports, as required under § 12-63c (a), "shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year," the court concluded that "[t]he act of imposing the 10% penalty was not discretionary on the part of the assessor; it was mandatory." Thus, applying § 12-55 (b) to the present case, the court concluded that "[i]t is clear that the penalty should have been imposed prior to the assessor signing the completion of the grand list" on or before January 31, 2015.

The court opined that "[c]ompliance with § 12-55 (b) is imperative because a late filing of the grand list by the assessor reduces the time given to the property owner to appeal to the Board of Assessment Appeals for relief from the action of the assessor. See *Wysocki* v. *Ellington*, 109 Conn. App. 287, 299, 951 A.2d 598 ([I]n the context of statutes relating to property tax assessment, when the statutory provision is for the benefit and protection of the individual taxpayer . . . the provision is mandatory. . . . If the provision is mandatory it must be followed or the assessment will be invalid. . . . All provisions designed to give [the taxpayer] an opportunity of a review of the assessment, whether by the assessors themselves or on appeal from their conclusions, are exclusively in his interest. [Internal quotation marks omitted.]), cert. denied, 289 Conn. 934, 958 A.2d 1248 (2008)." The court found that the assessor's delay in imposing the late filing penalties deprived the plaintiffs of the opportunity to appeal for a period of three months following the assessor's signing of the grand list. Specifically, the court opined that, "[a]s noted in General Statutes § 12-111, the plaintiffs are required to challenge the action of the assessor by filing an appeal to the [board] 'in writing, on or before February twentieth.' The imposition of the penalty by the assessor on January 31, 2015,[12] left the plaintiffs with twenty days to take their appeals instead of three months." (Footnote added.)

Notwithstanding the foregoing conclusions, the court rendered judgments in favor of the defendant, reasoning that "[a]lthough the plaintiffs seek to avoid the 10 [percent] penalty for failure to comply with § 12-55 (b), the only redress for the assessor's failure to comply with

the provisions of § 12-55 (b) is to postpone the right of the plaintiffs to appeal the action of the assessor until the succeeding grand list. See § 12-55 (c):

" 'If any such assessment increase notice is sent later than the time period prescribed in this subsection, such increase shall become effective on the next succeeding grand list.' The penalty prescribed for in § 12-63c (d) makes no provision for the removal of the 10 [percent] penalty imposed by the legislature, regardless of the action taken by the assessor." This joint appeal followed.

On appeal, the plaintiffs claim that the trial court erred by rendering judgments in favor of the defendant despite having correctly concluded that, pursuant to § 12-55 (b), the assessor was required to add any late filing penalties pursuant to § 12-63c (d) prior to signing the 2014 grand list. The defendant presents three alternative grounds for affirmance of the trial court's judgments: (1) the assessor made no mistake in assessing the late filing penalties at issue; (2) if the assessor made a mistake, then it was a clerical mistake that was corrected pursuant to § 12-60; and (3) the plaintiffs were not harmed by the assessor's actions. We agree with the plaintiffs' claim and do not agree with any of the defendant's alternative grounds for affirmance.

Before reaching the plaintiffs' claim on appeal, we briefly address the applicable standard of review. Resolution of the principal issue in this joint appeal requires us to analyze specific sections of chapter 203 of the General Statutes, which governs "Property Tax Assessment." Because statutory interpretation involves a question of law, our review is plenary. *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 249, 869 A.2d 611 (2005).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Dish Network, LLC* v. *Commissioner of Revenue Services*, 330 Conn. 280, 291, 193 A.3d 538 (2018). "Moreover, it is well settled that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter

. . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008).

## I

The plaintiffs claim that the trial court erred in allowing the assessor to impose late filing penalties *after* he signed the 2014 grand list, despite properly concluding that the assessor was statutorily obligated to add the late filing penalties *prior to* signing the grand list. In response, the defendant makes the fundamental contention, which it frames as its first alternative ground for affirmance, that the assessor made no mistake in assessing the late filing penalties after signing the grand list. We agree with the plaintiffs.

The fundamental principle that municipal tax assessors may act only pursuant to statute is well established. "Municipalities have no powers of taxation except those expressly given to them by the legislature. . . . Their powers of taxation can be lawfully exercised only in strict conformity to the terms by which they were given. . . . When a taxing statute is being considered, ambiguities are resolved in favor of the taxpayer." (Citations omitted.) *Consolidated Diesel Electric Corp.* v. *Stamford*, 156 Conn. 33, 36, 238 A.2d 410 (1968). Stated differently, "strict compliance with the statutory provisions is a condition precedent to the imposition of a valid tax." (Internal quotation marks omitted.) *Sheridan* v. *Killingly*, 278 Conn. 252, 264, 897 A.2d 90 (2006); see also *Metropolitan District* v. *Burlington*, 241 Conn. 382, 398, 696 A.2d 969 (1997) ("[i]t is well settled in Connecticut that tax assessments may only be made in strict conformity with the taxation statutes"). "Before the broad authority conferred on them by the statutes is exhausted, assessors have abundant power to correct omissions or mistakes, clerical or otherwise, independently of [§ 12-60]. . . . Once assessors have completed their duties as prescribed by statute, however, they have no authority to alter a list except to remedy a clerical omission or mistake. . . . Evidently the purpose of [§ 12-60] was to give to assessors or board of relief a limited continuing authority to correct . . . clerical omission[s] or mistake[s] . . . irrespective of whether their larger jurisdiction had been terminated." (Citations omitted; internal quotation marks omitted.) *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 594; see also *Metropolitan District* v. *Burlington*, supra, 398; *Empire Estates, Inc.* v. *Stamford*, 147 Conn. 262, 264–65, 159 A.2d 812 (1960) ("The statutes relating to the assessment of property for taxation and to the duties of assessors comprise chapter 86 of the 1949 Revision (General Statutes, c. 203). It is clear from these enact-

ments that the duties of assessors are prescribed with particularity. The manner in which real estate is to be described and assessed is explicitly set out. Failure of the assessors to list real estate in a manner conforming to the statutes will result in an invalid assessment and prevent recovery of the tax based on it. . . . The power of assessors to alter assessments exists only during the lawful period for the performance of their duties, before the lists are completed and filed. . . . Once the assessors have completed their duties as prescribed by statute, they have no authority to alter a list except to remedy a clerical omission or mistake." [Citations omitted.]).

Mindful of these general principles, we turn to the relevant statutory provisions. We begin with the language of § 12-55 (b), which provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and *make any assessment* omitted by mistake or *required by law*. . . ." (Emphasis added.)

The parties do not dispute that the imposition of the late filing penalties constitutes an "assessment" for purposes of § 12-55 (b). The question is, therefore, whether the assessor's imposition of the late filing penalties was "required by law." The trial court reasoned as follows: "[Section] 12-63c (d) requires that a property owner who fails to timely submit [income and expense] information (when provided with a form by the assessor as stated in subsection (a)), 'shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year.' . . . The act of imposing the 10 [percent] penalty was not discretionary on the part of the assessor; it was mandatory. See *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, 179 Conn. 712, 718–19, 427 A.2d 866 (1980)." We adopt such reasoning and conclude that the imposition of the late filing penalties constitutes an "assessment . . . required by law" under § 12-55 (b). As such, it was required to be made by the assessor "[p]rior to taking and subscribing the oath upon the grand list . . . ."[13]

Furthermore, we note that the assessor did not receive a grand list filing extension for the 2014 grand list. Pursuant to subsection (a) of General Statutes § 12-117, which is titled "Extension of time for completion of duties of assessors and board of assessment appeals," "[t]he period prescribed by law for the completion of the duties of any assessor, board of assessors or board of assessment appeals may, for due cause shown, be extended by the chief executive officer of the town for a period not exceeding one month, and in the case of the board of assessment appeals in any town in the assessment year in which a revaluation, pursuant to section 12-62, is required to be effective, such period

shall be extended by said chief executive officer for a period not exceeding two months. Not later than two weeks after granting an extension as provided under this subsection, the chief executive officer shall send written notice of the extension to the Secretary of the Office of Policy and Management." "By providing a particular method to procure extensions of time for [an assessor] to complete [his or her] duties, the legislature must have intended that the time limitations for action by the [assessor] be mandatory rather than merely directory. The provisions of § 12-117 delineating the method by which an extension may be obtained make little sense if [an assessor] may, without utilizing them, validly act beyond the time limit otherwise imposed." *Albert Bros., Inc.* v. *Waterbury*, 195 Conn. 48, 55, 485 A.2d 1289 (1985). Thus, where an assessor makes an adjustment to an assessment after its statutory authority has expired, as here, the adjustment is invalid. Id.

In support of its argument that the assessor was not required to include the § 12-63c (d) late filing penalties at the time he took the oath on the 2014 grand list, the defendant relies on § 12-55 (a), which provides in relevant part: "On or before the thirty-first day of January of each year, except as otherwise specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each such grand list shall contain the assessed values of all property in the town, reflecting the statutory exemption or exemptions to which each property or property owner is entitled, and including, where applicable, *any assessment penalty added in accordance with* [*General Statutes §§*] *12-41 or 12-57a* for the assessment year commencing on the October first immediately preceding. . . ." (Emphasis added.) The defendant argues that by expressly providing that penalties added pursuant to §§ 12-41 or 12-57a shall be included in the grand list, the legislature necessarily meant to exclude penalties assessed pursuant to § 12-63c (d).

The defendant predicates its argument on the axiom "expressio unius est exclusio alterius," translated from Latin to mean "the expression of one thing is the exclusion of another." "Although the so-called canons of statutory construction may at times serve as useful tools in deciphering legislative meaning, to rely on any one of them as a compelling factor in the interpretive process is problematic, because as Professor Karl Llewellyn persuasively has demonstrated, 'there are two opposing canons on almost every point.' K. Llewellyn, 'Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed,' 3 Vand. L. Rev. 395, 401 (1950). The so-called 'canons' are not that, at least in the sense that any one of them reliably can be determined to apply or not to apply in any given case. They are, instead, merely guides drawn from experience, to be employed or not to be employed carefully and judiciously, depending on the

circumstances. See F. Frankfurter, 'Some Reflections on the Reading of Statutes,' 47 Colum. L. Rev. 527, 544–45 (1947); see also *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 455, 692 A.2d 742 (1997). 'To permit them to displace the conclusions that careful interpretation yields . . . would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies.' *United Illuminating Co.* v. *New Haven*, supra, 455." *Burke* v. *Fleet National Bank*, 252 Conn. 1, 23–24, 742 A.2d 293 (1999). Although there are numerous cases in which certain statutory provisions have been interpreted "as demonstrating a legislative intent to exclude, by implication, other possible referents; see, e.g., *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982) (statutory itemization demonstrates legislative intent to exclude unenumerated items);" courts should decline to employ the axiom "where there is no language, legislative history or statutory purpose suggesting . . . such a result." *Burke* v. *Fleet National Bank*, supra, 24. This case is such an instance. The defendant's argument in this regard also fails because it ignores that § 12-55 (a) governs the *publication* of grand lists and specifies what they reflect for "public inspection." In contrast, § 12-55 (b) governs the *timing* of when "the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law." The defendant's position is also untenable because it assumes that the assessor has the authority to add § 12-63c (d) penalties for a particular assessment year—at any time and for an indefinite period—after he signed the grand list for that assessment year.[14] Such an interpretation yields an absurd or unworkable result in violation of General Statutes § 1-2z.

Because the assessor did not have the statutory authority to impose the late filing penalties after he took the oath on the 2014 grand list, the late adjustments are invalid and prevent any recovery of taxes based thereon. See *Empire Estates, Inc.* v. *Stamford*, supra, 147 Conn. 264. Accordingly, where the assessor had no statutory authority to act in the manner challenged, the trial court erred in its ultimate conclusion that because § 12-63c (d) does not expressly provide for the removal of unlawful penalties, the plaintiffs were without redress beyond the postponement of the right to appeal.

In sum, in the absence of the applicability of another statute permitting a later assessment, the assessor was required to add the late filing penalties "[p]rior to taking and subscribing to the oath upon the grand list . . . ." General Statutes § 12-55 (b). The assessor's failure to do so was fatal to the imposition of late penalties.

II

In addition to its first alternative ground for affirmance, which we discussed in part I of this opinion, the defendant claims, pursuant to Practice Book § 63-4 (a) (1), two additional alternative grounds on which the trial court's judgments should be affirmed, namely, (1) if the assessor made a mistake, it was a clerical mistake that was corrected pursuant to § 12-60, and (2) the plaintiffs were not harmed by the assessor's actions. We disagree with these alternative grounds for affirmance and address them in turn.

A

As its second alternative ground for affirmance, the defendant claims that, even if the assessor's delayed imposition of the late filing penalties were deemed a mistake, then it constitutes a clerical mistake that the assessor timely corrected pursuant to § 12-60. Although the defendant concedes that the omission of the late filing penalties from the 2014 grand list was intentional, it argues that any purported mistake "had [only] to do with the *administrative* procedure or method chosen to assess the penalty." (Emphasis added.) The plaintiffs contend, to the contrary, that the omission of the late filing penalties from the 2014 grand list at the time it was signed does not qualify as a clerical omission or mistake under § 12-60 because the assessor intended the omission at such time. We agree with the plaintiffs.

Section 12-60 provides in relevant part that "[a]ny *clerical omission or mistake* in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. . . ." (Emphasis added.) For purposes of this statute, "the adjective 'clerical' qualifies 'mistake' as well as 'omission.' " *Reconstruction Finance Corp.* v. *Naugatuck*, 136 Conn. 29, 32, 68 A.2d 161 (1949) (construing statutory predecessor to § 12-60).

In at least two decisions, our Supreme Court has considered, and rejected, the reliance of a municipality or a taxpayer on § 12-60 (or its statutory predecessor) to correct a purported "clerical omission or mistake" in an assessment list. Those cases are particularly instructive. In *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 136 Conn. 30, the plaintiff had filed with the board of assessors of the borough of Naugatuck a list of the taxable property it owned in the borough on October 1, 1947, omitting certain machinery that was exempt from state and municipal taxation at the time of filing (which occurred prior to November 1, 1947). On May 25, 1948, the United States Congress enacted a statutory amendment, to be effective as of midnight on June 30, 1947, that eliminated the exemption on which the plaintiff had relied. Id., 30–31. On June 14,

1948, the board of assessors issued a certificate of error, adding the machinery to the October 1, 1947 tax list of the plaintiff. Id., 31. On a reservation for advice before the Supreme Court of Errors, the borough argued that the addition to the plaintiff's tax list was "but the correction of a clerical error or omission" pursuant to a predecessor to § 12-60, namely, General Statutes (1949 Rev.) § 1735, which provided: "Any clerical omission or mistake in the assessment of taxes may be at any time corrected according to the fact by the assessors or board of tax review, and the tax shall be levied and collected according to such corrected assessment." *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 31–32. The Supreme Court of Errors disagreed, concluding that "[i]t was much more than that, for it concerned the very substance and extent of the assessment. . . . 'Clerical' errors are mentioned to distinguish them from, and exclude errors of substance, of judgment, or of law." Id.

In *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 587, our Supreme Court had occasion to revisit the meaning of the phrase "clerical omission or mistake" in General Statutes (Rev. to 1975) § 12-60.[15] In *National CSS, Inc.*, both the lessor and the lessee of certain computer equipment listed such equipment as taxable personal property on the property lists they filed with the city of Stamford's tax assessor, which resulted in double taxation. Id., 588–89. Upon realizing that only the lessor was obligated under the lease agreement to pay property taxes on the computer equipment at issue, the plaintiff lessee demanded a refund of the taxes it paid on the equipment, which demand was denied by the city. Id., 588–90. The plaintiff lessee argued in relevant part that it was entitled to a refund under § 12-60. Id., 592. Our Supreme Court rejected the effort, holding that "[w]here an error is of a deliberate nature such that the party making it at the time actually intended the result that occurred, it cannot be said to be clerical. . . . Because the plaintiff's action in listing the property and paying the taxes, although mistaken, was deliberate and intentional, it is not clerical, but can only be characterized as an error of substance." (Citation omitted.) Id., 596. Therefore, § 12-60 did not apply. Id., 596–97.

Applying the principles articulated in *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 136 Conn. 29, and *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 587, to the present case in considering whether the assessor properly invoked § 12-60 in issuing the certificates of change, we consider whether the assessor's delayed imposition of the late filing penalties corrected a clerical omission or mistake. By way of review, the parties stipulated that the assessor's practice has been to assess, pursuant to § 12-60, any late filing penalties under § 12-63c (d) retroactively, i.e., *after* signing the grand list for a given year.[16] The parties further stipulated that at the time the assessor took the oath on the

2014 grand list, he knew he had received the plaintiffs' 2013 income and expense reports after the June 1, 2014 deadline. Nevertheless, for whatever reason, he delayed adding the late filing penalties until approximately three months after he signed the 2014 grand list. On the basis of the foregoing, we conclude that because the assessor's omission of the late filing penalties at issue from the 2014 grand list at the time he signed it was "of a deliberate nature such that [the assessor] at the time actually intended the results that occurred, it cannot be said to be clerical." *National CSS, Inc.* v. *Stamford*, supra, 596. Because such omission, "although mistaken, was deliberate and intentional, it is not clerical, but can only be characterized as an error of substance." Id. Accordingly, § 12-60 does not apply.[17]

In sum, we conclude that the trial court properly concluded that the delayed imposition of the late filing penalties did not correct a clerical omission or mistake; therefore, § 12-60 does not apply so as to permit the retroactive adjustment to the assessments on the basis of the late filing penalties. We reject, therefore, the defendant's second alternative ground for affirmance.

### B

As its final alternative ground for affirmance, the defendant claims that the judgments should be affirmed because the plaintiffs were not harmed by the assessor's imposition of the late filing penalties. Specifically, the defendant contends that, because the plaintiffs were able to seek review of the assessor's imposition of the late filing penalties by appealing to the board, the plaintiffs have not suffered harm as a result of the timing of the assessor's actions, even if late. This argument warrants little discussion.

In support of its argument, the defendant relies on *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 205, 491 A.2d 1058 (1985), for the statement therein that "not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown." (Internal quotation marks omitted.) The defendant's reliance on *Murach* is entirely misplaced. In *Murach*, our Supreme Court affirmed the trial court's upholding of a planning and zoning commission's unanimous decision to approve a zone reclassification, despite the fact that one of the seven voting members was a statutorily proscribed member of the commission who was, therefore, disqualified from voting. Id., 194–95. On appeal, the court reasoned that, because only five votes were required for passage of the zoning reclassification and there was no contention that the disqualified member swayed the commission in its decision making, the plaintiffs failed to show that the so-called procedural irregularity resulted in any material prejudice to them. Id., 205–206.

In contrast, in the present case, the crux of the plaintiffs' arguments on appeal is that, because the assessor was without the statutory authority to impose the late filing penalties after he signed the grand list, the late filing penalties are null and void. Because we agree and conclude that the assessor may not collect a tax on an assessment that is untimely adjusted by the imposition of late filing penalties (i.e., after the assessor signed the 2014 grand list), it can hardly be said that the statutorily unauthorized delay of the imposition of the late filing penalties was a mere procedural irregularity, which, if uncorrected, would result in no harm to the plaintiffs.[18]

The judgments are reversed and the case is remanded with direction to render judgments for the plaintiffs.

In this opinion, the other judges concurred.

[1] General Statutes § 12-63c provides in relevant part: "(a) In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor, which term whenever used in this section shall include assessor or board of assessors, may require in the conduct of any appraisal of such property pursuant to the capitalization of net income method, as provided in [General Statutes §] 12-63b, that the owner of such property annually submit to the assessor not later than the first day of June, on a form provided by the assessor not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. Submission of such information may be required whether or not the town is conducting a revaluation of all real property pursuant to [General Statutes §] 12-62. Upon determination that there is good cause, the assessor may grant an extension of not more than thirty days to submit such information, if the owner of such property files a request for an extension with the assessor not later than May first.

* * *

"(d) Any owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who fails to submit such information as required under said subsection (a) . . . shall be subject to *a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year.* Notwithstanding the provisions of this subsection, an assessor or board of assessment appeals shall waive such penalty if the owner of the real property required to submit the information is not the owner of such property on the assessment date for the grand list to which such penalty is added. Such assessor or board may waive such penalty upon receipt of such information in any town in which the legislative body adopts an ordinance allowing for such a waiver." (Emphasis added.)

[2] The plaintiffs are Wilton River Park 1688, LLC, Wilton Campus 1691, LLC, and Wilton River Park North, LLC, which own, respectively, the subject real properties located at 5 River Road, 15 River Road, and 7 Godfrey Place in Wilton. For ease of reference, we refer to the properties together as the "subject properties."

[3] The parties filed stipulations of fact in each of the six respective tax appeals filed in the Superior Court. With the exception of identifying the particular plaintiff and the related subject property, the stipulations of fact are identical.

[4] October 26, 2016, is the date of the parties' stipulations.

[5] The assessor did not receive a grand list filing extension for the 2014 grand list.

[6] General Statutes § 12-60 provides: "Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. In the event that the issuance of a certificate of correction results in an increase to the assessment list of any person, written notice of such increase shall be sent to such person's last-known address by the assessor or board of assessment appeals within ten days immediately following the

date such correction is made. Such notice shall include, with respect to each assessment list corrected, the assessment prior to and after such increase and the reason for such increase. Any person claiming to be aggrieved by the action of the assessor under this section may appeal the doings of the assessor to the board of assessment appeals as otherwise provided in this chapter, provided such appeal shall be extended in time to the next succeeding board of assessment appeals if the meetings of such board for the grand list have passed. Any person intending to so appeal to the board of assessment appeals may indicate that taxes paid by him for any additional assessment added in accordance with this section, during the pendency of such appeal, are paid 'under protest' and thereupon such person shall not be liable for any interest on the taxes based upon such additional assessment, provided (1) such person shall have paid not less than seventy-five per cent of the amount of such taxes within the time specified or (2) the board of assessment appeals reduces valuation or removes items of property from the list of such person so that there is no tax liability related to additional assessment."

[7] The record does not reflect any explanation for the assessor's practice.

[8] The specific penalties at issue (in the form of increases in assessed values) are as follows: (1) $1,424,520 for Wilton River Park 1688, LLC; (2) $2,712,190 for Wilton Campus 1691, LLC; and (3) $159,850 for Wilton River Park North, LLC.

[9] General Statutes § 12-119 provides in relevant part: "When it is claimed . . . that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[10] General Statutes § 12-111 provides in relevant part: "(a) Any person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to the board of assessment appeals. Such appeal shall be filed, in writing, on or before February twentieth. The written appeal shall include, but is not limited to, the property owner's name, name and position of the signer, description of the property which is the subject of the appeal, name and mailing address of the party to be sent all correspondence by the board of assessment appeals, reason for the appeal, appellant's estimate of value, signature of property owner, or duly authorized agent of the property owner, and date of signature. The board shall notify each aggrieved taxpayer who filed a written appeal in the proper form and in a timely manner, no later than March first immediately following the assessment date, of the date, time and place of the appeal hearing. Such notice shall be sent no later than seven calendar days preceding the hearing date . . . . The board shall determine all appeals for which the board conducts an appeal hearing and send written notification of the final determination of such appeals to each such person within one week after such determination has been made. Such written notification shall include information describing the property owner's right to appeal the determination of such board. Such board may equalize and adjust the grand list of such town and may increase or decrease the assessment of any taxable property or interest therein and may add an assessment for property omitted by the assessors which should be added thereto . . . . When the board increases or decreases the gross assessment of any taxable real property or interest therein, the amount of such gross assessment shall be fixed until the assessment year in which the municipality next implements a revaluation of all real property pursuant to [General Statutes §] 12-62, unless the assessor increases or decreases the gross assessment of the property to (1) comply with an order of a court of jurisdiction, (2) reflect an addition for new construction, (3) reflect a reduction for damage or demolition, or (4) correct

a factual error by issuance of a certificate of correction. Notwithstanding the provisions of this subsection, if, prior to the next revaluation, the assessor increases or decreases a gross assessment established by the board for any other reason, the assessor shall submit a written explanation to the board setting forth the reason for such increase or decrease. The assessor shall also append the written explanation to the property card for the real estate parcel whose gross assessment was increased or decreased.

"(b) If an extension is granted to any assessor or board of assessors pursuant to [General Statutes §] 12-117, the date by which a taxpayer shall be required to submit a written request for appeal to the board of assessment appeals shall be extended to March twentieth and said board shall conduct hearings regarding such requests during the month of April. The board shall send notification to the taxpayer of the time and date of an appeal hearing at least seven calendar days preceding the hearing date, but no later than the first day of April. If the board elects not to hear an appeal for commercial, industrial, utility or apartment property described in subsection (a) of this section, the board shall notify the taxpayer of such decision no later than the first day of April."

[11] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of . . . the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court. . . . If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review or board of assessment appeals, as the case may be, to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . . If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, less any lien recording fees incurred under [General Statutes §§] 7-34a and 12-176, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[12] We note that this date is an error; it is undisputed that the assessor imposed the late filing penalties on April 29, 2015. This error has no impact on our analysis.

[13] We note that the foregoing conclusion is in harmony with the language of § 12-63c (d), which provides that "[a]ny owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section *for any assessment year*, who fails to submit such information as required under said subsection (a) . . . shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property *for such assessment year*." (Emphasis added.)

[14] Indeed, at oral argument before this court, the defendant's counsel confirmed that it is the defendant's position that the assessor may impose § 12-63c (d) penalties for a particular assessment year, where applicable,

at any time for an indefinite period.

[15] General Statutes (Rev. to 1975) § 12-60 provided: "Any clerical omission or mistake in the assessment of taxes may be at any time corrected according to the fact by the assessors or board of tax review, and the tax shall be levied and collected according to such corrected assessment."

[16] The trial court's memorandum of decision states that the assessor adhered to such practice for over twenty years. The parties do not challenge that statement on appeal.

[17] Moreover, the fact that it has been the assessor's longtime practice to assess retroactively any late filing penalties under § 12-63c (d) provides the defendant no safe harbor. *Middletown* v. *Berlin*, 18 Conn. 189, 197 (1846) ("[a]ssessors are the officers of the law, and must obey the law; and no direction of the town, nor long continued usage, can justify a departure from the law").

[18] Relatedly, we briefly address the trial court's ultimate conclusion that "the only redress for the assessor's failure to comply with the provisions of § 12-55 (b) is to postpone the right of the plaintiffs to appeal the action of the assessor until the succeeding Grand List. See § 12-55 (c): 'If any such assessment increase notice is sent later than the time period prescribed in this subsection, such increase shall become effective on the next succeeding grant list.' " This conclusion was in error because the assessor's statutory violation in the present case does not relate to the mere timing of an assessment increase notice but, rather, the assessor's failure under § 12-55 (b) to "make any assessment . . . required by law" before "taking and subscribing to the oath upon the grand list." At a minimum, the applicability of § 12-55 (c) assumes that the assessor has otherwise complied with his or her assessment duties under § 12-55 (b) (i.e., made the assessment at a time when he or she had the statutory authority to do so).

———————————————————